UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Catherine B. Newkirk, | ) | |
| | ) | Civil Action No. 4:13-cv-01635-RMG-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| James B. Enzor, individually and as an | ) | |
| officer of the South Carolina Department | ) | |
| of Public Safety; South Carolina | ) | |
| Department of Public Safety, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff filed this 42 U.S.C. § 1983 action alleging that Defendant Enzor violated her constitutional rights by unlawfully arresting her and using excessive force during her arrest. Plaintiff brought South Carolina state law claims against the South Carolina Department of Public Safety ("SCDPS"). This matter is before the court on Defendant Enzor's Motion for Summary Judgment, ECF No. 64, filed on November 25, 2014, and SCDPS's Motion for Summary Judgment, ECF No. 65, filed on December 1, 2014. On December 18, 2014, Plaintiff filed an Omnibus Memorandum in Response in Opposition to Defendants' Motions, ECF No. 74. SCDPS filed a Reply on January 5, 2015, ECF No. 75. Therefore, this matter is now ripe for review. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(f), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review.

I.      Background

This lawsuit arises from a traffic stop on Interstate 95 ("I-95") and Plaintiff's arrest following the stop. ECF No. 1. On October 14, 2012, Defendant Enzor pulled over Plaintiff for

speeding in Florence County. Plaintiff and her husband were traveling through South Carolina when the traffic stop occurred, and Plaintiff's husband was in the passenger's seat.[1] According to Defendant Enzor, Plaintiff was traveling at 77 miles per hour in a construction work zone where the posted speed limit was 55 miles per hour. When Defendant Enzor started to hand Plaintiff the traffic citation, Plaintiff began to dispute that she was speeding. Plaintiff told Defendant Enzor that she believed he pulled her over based on racial discrimination and not because she was speeding.

At this point, Defendant Enzor asked Plaintiff to step out of her vehicle, and Plaintiff complied. However, Plaintiff turned to walk back to her vehicle after Defendant Enzor began talking and did not comply with any of his directives from that point on. Ultimately, Defendant Enzor arrested both Plaintiff and her husband. The majority of the encounter between Plaintiff and Defendant Enzor was recorded by the dash-mounted video camera in Enzor's patrol car.

Plaintiff brings suit against Defendant Enzor under § 1983 for false arrest and use of excessive force during her arrest under the Fourth, Fifth, and Fourteenth Amendments to the Constitution. ECF No. 1-1 at 9. Additionally, Plaintiff brings suit against SCDPS for assault, battery, negligence/gross negligence/recklessness, intentional infliction of emotional distress/outrage, malicious prosecution, false imprisonment, and negligent supervision/training. *Id.* at 9-14.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

---

[1] Plaintiff's husband has also filed a similar action pending before the court.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

III.    Analysis

A.  Defendant Enzor's Motion for Summary Judgment

Defendant Enzor argues that he had probable cause to arrest Plaintiff and that he is entitled to qualified immunity for all claims brought against him in his individual capacity. ECF No. 64-1 at 5-11. In her Response, Plaintiff argues that Defendant Enzor is not entitled to qualified immunity or judgment as a matter of law because a jury could conclude that he acted in an objectively unreasonable manner and it is clearly established that an arrest lacking probable cause offends the constitution. ECF No. 74 at 11-20. The undersigned will address whether Defendant Enzor has qualified immunity on Plaintiff's causes of action in turn.

1.  Qualified Immunity on Plaintiff's False Arrest Cause of Action

Defendant asserts that he is entitled to qualified immunity on Plaintiff's claim for unlawful arrest. ECF No. 64 at 4-5. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. 457 U.S. 800 (1982). That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Id.* at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case.  *Id.* at 236.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition."  *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit."  *Id.* (citations and internal quotation omitted).

Defendant Enzor contends that a warrantless arrest is valid if an officer has probable cause to believe that the individual violated the law in any way. ECF No. 8-9. Specifically, Defendant Enzor argues that Plaintiff committed the misdemeanor of speeding while in his

4

presence. *Id.* at 11. Further, Defendant Enzor maintains that he arrested Plaintiff for resisting arrest, and "Plaintiff has admitted during her deposition that she resisted Defendant Enzor's attempts to place her under arrest." *Id.* Given the uncontested facts, including the video of the traffic stop, Defendant Enzor argues that he was "clearly within his authority to arrest Plaintiff in this case and did not transgress any bright lines in doing do." *Id.*

Plaintiff argues that Defendant Enzor's Motion should be denied "because there is a triable question of fact as to whether [Plaintiff] was arrested for accusing Enzor of acting out of racial bias or whether she was arrested for speeding as Enzor now contends." ECF No. 74 at 13. Further, Plaintiff contends that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out. *Id.* at 14-15.

### i. False Arrest in violation of the Fourth Amendment

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters,* 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott,* 156 F.3d 563, 569 (4th Cir. 1998) (internal

citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky,* 942 F.2d 257, 264 (4th Cir. 1991). Probable cause will be found when "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000). "'Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Rogers v. Pendleton,* 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992)). "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* A court's inquiry should be made based on the information possessed by the officer at the time of the arrest that was then reasonably available to him at the time of arrest, and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett,* 973 F.2d at 312. When a plaintiff alleges a lack of probable cause for an arrest, he "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff was involved in the charged offense. *Brown v. Gilmore,* 278 F.3d 362, 368 (4th Cir. 2002).

Plaintiff does not deny that she was speeding on the day of her alleged false arrest, and whether Plaintiff was speeding does not appear to be at issue. Rather, Plaintiff is maintaining that Defendant Enzor's real motive in arresting her is a question of fact, and if his motive in arresting Plaintiff was because of Plaintiff's accusations of his racial bias, then Defendant Enzor is not

entitled to qualified immunity. In support of her argument, Plaintiff cites to a Sixth Circuit opinion, *Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002).

In *Greene* the plaintiff, who was a lawyer, went to retrieve his car from the "hall of justice" after it was towed. *Id.* at 892. After asking why he was required to pay "storage fees," Greene got into a quarrel with Lieutenant Barber, a police officer. *Id.* Eventually, Barber placed Greene under arrest, and Greene "demanded to know why," and maintained "that there was no basis for the arrest and that it was illegal." *Id.* at 893. Ultimately, Greene was charged with "creating a disturbance, in violation of Grand Rapids Code Section 9.137, and with hindering and opposing a police officer." *Id.* A Michigan jury acquitted Greene of the charges. *Id.*

In a civil action, Greene alleged that "he had been subjected to an unreasonable arrest without probable cause and solely in retaliation for exercising his First Amendment right to free speech." *Id.* at 893. Greene also alleged he was the victim of excessive force. *Id.* On appeal, Greene argued that "the granting of summary judgment was improper because a reasonable jury could have found that he was arrested without probable cause and as a result of his protected speech." *Id.* at 894. In its qualified immunity analysis, the Sixth Circuit Court of Appeals held that "a respectable argument can be made that Lt. Barber had probable cause to believe that Greene was engaging in a 'disturbance' in such a place." *Id.* at 895. However, the appellate court reversed the district court because "[t]aken in the light most favorable to Mr. Greene, we believe that the record before us would entitle a jury to find that the arrest was the product of improper motive." *Id.* at 897. Therefore, the court found that the factual issue of Barber's true motivation in arresting Greene precluded summary judgment on his qualified immunity. *Id.*

Though favorable to Plaintiff's argument, it appears that the *Greene* case is in the minority. The law on violations of the Fourth Amendment is clear and holds that "[i]f an officer

has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Though *Atwater* does not address the officer's motivation for the arrest and whether that motivation should be considered when determining whether a citizen's Fourth Amendment rights have been violated, several circuits have found that motivation should not be considered. The Fourth Circuit Court of Appeals has not expressly ruled on this issue. *See McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 560 (D.S.C. 2013).

In the case of *Elkins v. Broome*, a North Carolina district court held that the existence of probable cause for the arrest precluded arrestee's Fourth Amendment unlawful arrest and First Amendment retaliation claims. 328 F. Supp. 596 (2004). There, plaintiff Elkins was involved in a car accident, and a witness told the officer at the accident scene that plaintiff was at fault. *Id.* at 597. However, the arresting officer, in the accident report, concluded that fault could not be determined because the witness was a friend of the other driver. *Id.* On the day of the accident, Elkins was unable to produce proof of insurance to the officer. *Id.* Two weeks after the accident the officer contacted Elkins to get his insurance information, but Elkins still did not have it. *Id.* Elkins later discovered that the officer, in a supplemental report, indicated Elkins was at fault in the traffic accident, when in the original accident report fault was undetermined. *Id.* at 597-98. Several months after the accident, Elkins mailed the officer's supervisor a letter requesting that he "re-investigate the accident, suggesting that [the officer] had filed a supplemental report as a result of his bias against [Elkins]." *Id.* at 598. Six days later Elkins was arrested, pursuant to a warrant, for violating a North Carolina statute that "prohibits delaying a police officer in the

performance of his duties." *Id.* A North Carolina judge found Elkins guilty of the charge, but a judgment was never entered. *Id.*

Elkins later sued the officer and alleged that he "violated his Fourth Amendment rights by obtaining a warrant for Plaintiff's arrest without probable cause." *Id.* at 599. There, the court found that Elkin's guilty verdict demonstrated that the officer had probable cause to seek a warrant, and Elkins could not "maintain his Fourth Amendment claim under Section 1983." *Id.* at 599-600. Plaintiff Elkins also brought a First Amendment claim and alleged that the officer "sought a warrant for [Elkin's] arrest because [he] complained to [the officer's] supervisor." *Id.* at 600. Elkins pointed out that he was arrested 111 days after the accident but only six days after his complaint as proof of the officer's "improper motive." *Id.* The court agreed that this evidence called the officer's "motives into question." *Id.* Nevertheless, the North Carolina district court granted the officer summary judgment.

There, the court reasoned that when "law enforcement officers might have a motive to retaliate but there [is] also a ground to charge criminal conduct against the citizen they dislike [ ] . . . . the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Id.* (citing *Keenan v. Tejeda,* 290 F.3d 252, 261-62 (5th Cir. 2002) and referencing *Mozzochi v. Borden,* 959 F.2d 1174, 1180 (2d Cir. 1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government.")); *see also Hunter v. Clardy*, 558 F.2d 290, 292 (5th Cir. 1977) ("Once probable cause is established, the arresting officer's collateral bad motive is immaterial since the guilt of the arrestee is determined by a judicial officer, not by the law enforcement officer."). Furthermore, the *Elkins* court found that "[t]he existence of probable cause for the arrest defeats Plaintiff's First Amendment claim,

regardless of Defendant's motivation." *Id.* (referencing *Wood v. Kesler,* 323 F.3d 872, 883 (11th Cir. 2003); *Luellen v. City of E. Chicago,* 350 F.3d 604, 616 (7th Cir. 2003); *Keenan,* 290 F.3d at 260, 262; *Smithson v. Aldrich,* 235 F.3d 1058, 1063 (8th Cir. 2000); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 120 (2nd Cir. 1995); *Skoog v. Clackamas County,* 2004 WL 102497, at *22 (D.Or. Jan. 12, 2004) (unpublished); *Cavellini v. Groccia,* 1996 WL 464058, at *5 (E.D.N.C. Aug. 12, 1996) (unpublished)).

In a more recent order, a South Carolina district court found that a plaintiff's cause of action for retaliatory arrest was not barred by the existence of probable cause. *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013). However, the court still found that officers were entitled to qualified immunity. There, McCoy brought suit pursuant to § 1983 for violation of his First and Fourth Amendment rights which he claimed occurred during an arrest in Columbia. *Id.* at 545. Additionally, McCoy sought a declaratory judgment finding that a city ordinance which made it "unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties," was unconstitutional. *Id.* at 546. Upon review, the court found that the ordinance was facially unconstitutional as unduly vague. *Id.* at 554. The court then analyzed whether the ordinance was unconstitutional as applied to McCoy during his arrest. *Id.* at 544-59. There, like in the case at issue, officers asserted that they had probable cause to arrest McCoy, and the existence of probable cause "negates any Fourth Amendment violation. . . ." *Id.* at 555.

The court found that those officers had probable cause to arrest McCoy for violating the city ordinance. *Id.* at 555-558. Specifically, the court found that based on video footage of McCoy's arrest, "it was reasonable for the Officer Defendant to believe that McCoy had violated the Ordinance." *Id.* at 558-59. Furthermore, the court found that "McCoy's arrest [was] still valid even though this court has determined that the Ordinance pursuant to which McCoy was arrested

[was] unconstitutional. . . ." *Id.* at 559 (citing *DeFillippo,* 443 U.S. at 37-38). Based on its probable cause finding, the court concluded that McCoy's arrest for violation of the ordinance did not violate his Fourth Amendment rights. *Id.* at 559.

As indicated above, the majority of circuits, including two district courts in the Fourth Circuit have held that so long as probable cause exists to arrest an individual, the arresting officer's true motives in the arrest are irrelevant to a cause of action for false arrest pursuant to the Fourth Amendment. Therefore, considering the evidence in the light most favorable to Plaintiff and assuming that Defendant Enzor arrested Plaintiff because of her critical words toward him regarding his purported racism, Plaintiff's false arrest claim fails as matter of law. Here, Defendant Enzor had probable cause to believe that Plaintiff violated a speeding statute while in his presence. Based on his probable cause, Defendant Enzor had the legal authority to place Plaintiff under arrest without violating her Fourth Amendment right to be free from unlawful seizure. Therefore, Plaintiff's false arrest claim fails as a matter law.

> ii.   Retaliatory Arrest in violation of the First Amendment

Plaintiff has pleaded a cause of action for violation of § 1983, "including the right to be free from unlawful arrest under the 4th, 5th, and 14th Amendments." ECF No. 1-1 at 9. Though Plaintiff does not include or reference the First Amendment in this cause of action, in her Response Brief, she argues that "criticism of the police *never* constitutes grounds for an arrest." ECF No. 74 at 14 (emphasis in original). Additionally, Plaintiff maintains that the Government cannot punish a person for constitutionally protected speech. *Id.* at 14-15. Even liberally construing Plaintiff's Complaint to include a § 1983 First Amendment violation, the undersigned still finds that Plaintiff's claim would fail. *See Atwater*, 532 U.S. at 354 (holding that probable

cause is the only limit the Fourth Amendment to the U.S. Constitution imposes on a police officer's decision to arrest).

The *McCoy* case, *see supra*, analyzed the plaintiff's First Amendment cause of action for retaliatory arrest.[2] 929 F. Supp. 2d at 559. Even though the court found that officers had probable cause to arrest McCoy, the court held that probable cause "may not foreclose the possibility of a First Amendment violation." *Id.* There, the court cited the Supreme Court case of *Reichle v. Howards*, 132 S.Ct. 2088 (2012), which held "that, as of the time of the plaintiff's arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment." *Id.* Accordingly, the *Reichle* court reversed the Tenth Circuit's ruling that Secret Service agents were not entitled to qualified immunity. *Id.* at 559-60. In its analysis of qualified immunity the Supreme Court explained that the "right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause," and the "Court has never held that there is such a right." *Id.* at 560 (citing 132 S.Ct. at 2094). Based on several decisions, the district court held that the "best approach is to allow McCoy the opportunity to prove retaliatory arrest rather than foreclose his First Amendment claim as a matter of law." *Id.* at 561. In its application of the facts, the court determined that genuine issues of material fact existed regarding whether McCoy was arrested for his speech. *Id.* However, the court found that the officer defendants were still

---

[2] The district court found the Supreme Court case of *Hartman v. Moore*, 547 U.S. 250 (2006), "held that a plaintiff cannot state a claim of retaliatory *prosecution* in violation of the First Amendment if the charges were supported by probable cause. Although *Hartman* did not decide whether its no-probable-cause requirement extends to retaliatory *arrests*, several federal courts of appeal have subsequently held that it does." 929 F.Supp. 2d at 559 (emphasis in original) (citing *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010); *Phillips v. Irvin*, 222 Fed.Appx. 928, 929 (11th Cir. 2007); *Barnes v. Wright*, 449 F.3d 709, 719 (6th Cir. 2006); *cf. McBeth v. Himes*, 598 F.3d 708, 719 (10th Cir. 2010) (applying the *Hartman* framework in the context of claim based on suspension of business license in retaliation for exercise of First Amendment rights).

entitled to qualified immunity. *Id.* Under the second prong of qualified immunity, a court is to examine whether the right at issue was clearly established at the time a plaintiff was arrested. The *McCoy* court found that neither the Supreme Court nor the Fourth Circuit had recognized a First Amendment right to be free from a retaliatory arrest at the time the Plaintiff was arrested. *Id.* at 562. Therefore the court granted the officer defendants summary judgment on McCoy's § 1983 claims. *Id.*

Assuming that Plaintiff had brought a § 1983 action pursuant to her First Amendment rights, the undersigned finds that at the time she was arrested, her right to be free from a retaliatory arrest with the presence of probable cause was not clearly established. Therefore, the undersigned finds that Defendant Enzor is entitled to qualified immunity. Accordingly, the undersigned recommends granting Defendant Enzor summary judgment on Plaintiff's false arrest cause of action whether pleaded under the First or the Fourth Amendment.

2. Qualified Immunity on Plaintiff's Excessive Force Cause of Action

Defendant Enzor asserts that he is entitled to qualified immunity on Plaintiff's § 1983 claim for excessive force. ECF No. 64-1 at 12-16. Defendant Enzor contends that the recorded video of the traffic stop indicates that Plaintiff refused to comply with instructions to "move from the edge of the roadway for her personal safety and so he could explain the ticket in view of the dashboard camera. Plaintiff can then be seen turning to return to her vehicle in defiance of [Defendant] Enzor's instructions." *Id.* at 13. Defendant Enzor argues that the "video clearly demonstrates that [he] was performing discretionary functions without violating clearly established constitutional rights of which a reasonable person would have known when he encountered Plaintiff." *Id.* at 15.

In response, Plaintiff argues that "the use of *any* force to effectuate an illegal arrest is unreasonable." ECF No. 74 at 19 (emphasis in original). Further, Plaintiff maintains that "even

construing [her] passive, non-cooperation as [Defendant] Enzor asks, [Plaintiff's] conduct is only a punishable offense if the arrest was warranted in the first instance. Since it was not, [Defendant] Enzor's use of force was excessive and [Plaintiff] was privileged to resist with far greater force than the record reflects." *Id.* at 20.

The undersigned has found that, based on probable cause, Defendant Enzor lawfully arrested Plaintiff. *See supra* section (A)(1). Therefore, Plaintiff is precluded from arguing that Defendant Enzor could use no amount of force in arresting Plaintiff. Accordingly, the undersigned will examine whether the amount of force Defendant Enzor used during Plaintiff's arrest was reasonable.

The parties correctly reference *Graham v. Connor*, 490 U.S. 386 (1989), as the test for evaluating the degree of force used during an arrest. There, the Court established that claims against law enforcement for excessive force in course of arrest, investigatory stop or other "seizure" of a person are properly analyzed under the Fourth Amendment's objective "reasonableness" standard. *Id.* at 395. There, the Supreme Court recognized "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Further, the Court held that there is not a precise mechanical application of the standard, but "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Additionally, the Court instructs that an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are

often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Therefore, guided by the authority in *Graham*, the undersigned must examine the totality of the circumstances and the uncontested facts, viewed in the light most favorable to the Plaintiff, to determine whether Defendant's use of force was reasonable.

The undersigned has reviewed the videos submitted to the court. The dash-cam video from Defendant Enzor's vehicle indicates that Plaintiff was pulled over on October 14, 2012, on I-95 North. ECF No. 64-2. Other than the date, time, position, and other electronic information on the screen, the video depicts Defendant Enzor approaching Plaintiff's vehicle from the passenger's side. Defendant Enzor then tells Plaintiff that he clocked her speeding "about two miles back" where the speed limit drops to 55. Specifically, Defendant Enzor indicates that he clocked Plaintiff driving 77 miles per hour. Defendant Enzor requests Plaintiff's vehicle registration and proof of insurance,[3] and returns to his patrol car. Defendant Enzor then returns to Plaintiff's vehicle, again approaching from the passenger's side. Defendant Enzor tells Plaintiff that he is going to cut her speed "back to a 64 in a 55," however Plaintiff's words to Defendant Enzor during this exchange are inaudible. After the exchange and a discussion of Plaintiff's speed, Defendant Enzor instructs Plaintiff to "step out of the vehicle."

Plaintiff then exits the vehicle and walks to the back of it where Defendant Enzor is standing. Defendant Enzor then states: "Let me tell you something right now," and he points to the right, away from the Interstate. While Defendant Enzor continued to talk, Plaintiff stated "no. . . .," and remained standing at the edge of the Interstate. At that point, Defendant Enzor notifies Plaintiff that she is "under arrest," and he takes Plaintiff's wrists and tries to pull her toward him,

---

[3] Whether Defendant Enzor also verbally requests Plaintiff's driver's license is unclear.

and away from the Interstate. In response, Plaintiff states "for what,"[4] and again, Defendant

Enzor points toward the middle section of the vehicle's rear, away from the Interstate, and he

pulls Plaintiff toward that spot. Plaintiff does not comply with Defendant's Enzor's instructions,

and, as Plaintiff indicates in her Response Brief, Defendant Enzor "steps behind [Plaintiff] and

presses her up against her vehicle, still on the driver's side of the vehicle. . . ." ECF No. 74 at 6.

Though Plaintiff maintains that she was "exposed to passing traffic" at this point, the video

depicts that her feet are not on the outer white line of the Interstate.  Additionally, Defendant

Enzor is standing behind Plaintiff and is between her and the traffic. In the same spot, Defendant

Enzor attempts to pull Plaintiff's hands behind her back, but she continues to resist. Defendant

Enzor then repeats, "Ma'am, you are under arrest," but Plaintiff does not move. Defendant Enzor

then instructs Plaintiff to "put [her] hands behind her back." Eventually, Defendant Enzor

pushes Plaintiff toward the middle of the back of the vehicle and away from the Interstate, still

attempting to pull Plaintiff's hands behind her back. Defendant Enzor instructs Plaintiff to "quit

resisting arrest," but at no point does Plaintiff comply with Defendant Enzor's instructions.

While Defendant Enzor is trying to put Plaintiff in handcuffs and arrest her, Plaintiff's

husband opens the passenger's side door and steps out of the vehicle. While attempting to

restrain Plaintiff, Defendant Enzor points at Plaintiff's husband and instructs him to "get into the

car!". Defendant Enzor then pulls out his radio to call for back-up.  At this point, Plaintiff's

hands are by her side and she acknowledges the dash-cam video-taping the incident. Defendant

Enzor eventually puts Plaintiff in handcuffs and reads her *Miranda* rights to her. Defendant

Enzor then points toward his patrol car and instructs Plaintiff to "step back here." Once out of the

---

[4] Though Plaintiff's words are not entirely audible in the video, Plaintiff indicates in her
Response Brief that she exclaimed "for what?!" in response to Defendant Enzor. ECF No. 74 at
6.

camera's view, Defendant Enzor instructs Plaintiff to "Get in the car! Get in the car!". Plaintiff's husband then shouts something in Plaintiff's and Defendant Enzor's direction, and Defendant Enzor tells Plaintiff's husband that he is "under arrest too." Plaintiff's husband then shuts his door while Defendant Enzor continues to instruct Plaintiff to "get in the car!". The video depicts Plaintiff's husband yelling something out the passenger's side window, but his exact words are inaudible.

Sirens are then heard approaching Defendant Enzor's patrol car. An officer is heard instructing Plaintiff to "come over here and sit down for [him.." The other officer at the scene then tells Plaintiff that she needs to get in the car. Plaintiff then begins shouting at the officers, and yells, "this is ridiculous," and "you will pay." Defendant Enzor walks back to Plaintiff's vehicle and opens the passenger's side door. Plaintiff's husband willfully exits the vehicle and places his hands behind his back, allowing Defendant Enzor to handcuff him.

Plaintiff then screams: "You have no reason to do this to me!" Additionally, Plaintiff shouts that everything was happening because she "called [Defendant Enzor] the racist that you are!". Plaintiff also shouts: "You think that because you are in South Carolina that you can get away with this. That day is over! It's over! That day is over." While Plaintiff continued to shout at the officers, Plaintiff's husband complies with Defendant Enzor's directives and walks toward the officers' patrol cars while handcuffed. Plaintiff states "No, I'm not," when Defendant Enzor again instructed her to get in the car. Plaintiff then told Defendant Enzor "you will pay dearly," once everyone was out of the camera's view as well as "your whole department will pay dearly." Plaintiff continues to argue with and yell at the officers once out of the camera's view and continued refusing to get into Defendant Enzor's patrol car. Officers then ask Plaintiff to move so that they could assist her in getting up, but Plaintiff continues to argue with the officers and

said, "I'm not going to have an arrest record because of something simple like this." Plaintiff instructs the officers to lock her vehicle, and they explain to her what would happen to it. Plaintiff then instructs the officers to "take these things off of my hands—they are hurting me." Plaintiff repeatedly asks "Do I have to ride with this racist?" and asks that someone else transport her. Officers then instruct Plaintiff to put her foot and leg in the car, and a door shuts.

Over the audio Defendant Enzor explains to the officers what happened and states that Plaintiff was speeding—that she was going 77 in a 45.[5] Further, Defendant Enzor stated that "she didn't want to accept the ticket," so he "pulled her out the car and tried to explain it to her." Defendant Enzor continued and told the officers, verbatim: "She kept on. She wasn't going to accept the ticket. I said that's fine. Put your hands behind your back, you're under arrest. . . ." When asked "what did he [Plaintiff's husband] do?" Defendant Enzor responded that he kept getting in and out of the car. While Defendant Enzor is explaining this, Plaintiff pleads with officers to take off her handcuffs due to an ailment with her hands. Plaintiff repeatedly yells: "my hands are hurting!" and "my hands are swelling!" while she kicks the patrol car. The remainder of the video from this viewpoint includes footage of officers waiting for the tow truck to arrive and move Plaintiff's car. Eventually, a tow truck arrives, and Plaintiff's car is towed from the scene. Approximately 45 minutes into the footage the viewpoint of the camera then moves to Plaintiff's husband sitting and wearing a seatbelt in a patrol car. The footage then depicts officers driving Plaintiff's husband to the police station.

The undisputed video evidence before the court demonstrates that Plaintiff never surrendered or stopped resisting arrest until another officer arrived at the location of the traffic stop. The United States Supreme Court, the Fourth Circuit and other circuits have consistently

---

[5] It sounds as if Defendant Enzor says 77 in a 45 though earlier he stated that the speed limit was 55 miles per hour.

held that officers may use a reasonable amount of force to secure a suspect. *See e.g.*, *Scott v. Harris,* 550 U.S. 372, (2007); *Graham,* 490 U.S. 386; *Thomas v. Holly*, 533 F. App'x 208, 215 (4th Cir. 2013) *cert. denied,* 134 S. Ct. 939 (2014). *Graham* instructs that in analyzing the amount of force used, the court should consider three factors:  (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396.

Here, the first factor of the *Graham* test may weigh slightly in Plaintiff's favor. While many traffic violations may not be considered serious crimes, a violation for speeding in a construction zone—as Plaintiff was here—is subject to enhanced penalties. Nevertheless, the other two *Graham* factors weigh in Defendant Enzor's favor. When she exited her vehicle, Plaintiff was very close to the edge of I-95. By failing to comply with Defendant Enzor's attempt to arrest her, Plaintiff continued to position herself close to oncoming Interstate traffic. Therefore, the undersigned finds that the amount of force employed by Defendant Enzor was reasonable based on the threat to Plaintiff and Defendant Enzor's safety. The third *Graham* factor—whether the object of the force "is actively resisting arrest or attempting to evade arrest by flight"—also favors Defendant Enzor. Here, it is undisputed that Plaintiff was resisting arrest when Defendant used force to secure Plaintiff, including forcing her to the back of the vehicle and away from the Interstate and forcefully pulling her hands behind her back in order to handcuff her. *See Woods v. Cashier*, No. 0:05-2211-DCN-BM, 2006 WL 2385275, at *10 (D.S.C. Aug. 17, 2006) ("Plaintiff cannot engage in willful and violent conduct and refuse to obey direct orders of law enforcement officers with respect to his movements, and then complain

that those same law enforcement officers used physical force against him to secure the situation, as long as the amount of force used was not excessive.").

Therefore, the undersigned finds Defendant Enzor's use of force reasonable under these circumstances. Accordingly, the undersigned recommends granting Defendant Enzor's Motion for Summary Judgment on Plaintiff's cause of action for excessive force because he is entitled to qualified immunity as a matter of law.

3.  Eleventh Amendment Immunity

Defendant Enzor maintains that "[t]o the extent Plaintiff's Complaint is construed to allege a cause of action under § 1983 against Defendant Enzor in his official capacity, this claim must be barred." ECF No. 64-1 at 18-19. The undersigned agrees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendant Enzor was an agent or employee of the State when acting in his official capacity, he is not a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in

this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendant Enzor, in his official capacity, is immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Enzor in his official capacity be dismissed.

### B.  SCDPS's Motion for Summary Judgment

SCDPS maintains that it is immune from suit pursuant to the South Carolina Tort Claims Act ("SCTCA"). ECF No. 65-1 at 10-20. Specifically, SCDPS argues SCTCA provides it with immunity from suit because Plaintiff testified that Defendant Enzor was acting intentionally, maliciously, and outside the scope of his duty. *Id.* at 10-17. Additionally, Defendant SCDPS contends that Plaintiff's cause of action for intentional infliction of emotional distress is expressly barred under section 15-78-30(f) of SCTCA. *Id.* at 17-18.[6] SCDPS argues that Plaintiff's claims for negligence, gross negligence, and recklessness must be dismissed because Plaintiff has failed to identify a specific duty owed to her by SCDPS, and the claim is otherwise barred by SCTCA. *Id.* at 18-20. Finally, SCDPS argues that Plaintiff's claims for negligent supervision and training must be dismissed because Plaintiff has failed to establish the necessary elements of each claim. *Id.* at 20-29. The undersigned will address each of SCDPS's arguments in turn.

### 1.   Intentional, Malicious, and Outside-Scope-of-Duty Conduct Claims

Plaintiff pleaded causes of action against SCDPS for assault, battery, malicious prosecution, and false imprisonment. ECF No. 1-1 at 9-11. SCDPS maintains that it is entitled to summary judgment on these claims because even assuming Defendant Enzor acted intentionally, SCTCA grants immunity to governmental entities when an employee acts outside the scope of

---

[6] Plaintiff "agree[s] that the SCTCA does not waive sovereign immunity for this claim and consent[s] to its dismissal." ECF No. 74 at 25. Therefore, the undersigned will not address Plaintiff's cause of action for intentional infliction of emotional distress and submits this claim should be dismissed based on the consent of the parties.

his employee duties. ECF No. 65-1 at 10-17. In Response, Plaintiff maintains that Defendant Enzor acted within the scope of his employment even though his conduct lacked legal justification. Accordingly, the undersigned is tasked with determining whether Plaintiff can argue that Defendant Enzor was acting within the scope of his employment while committing these alleged intentional torts.[7]

SCTCA grants to the State, its political subdivisions, and employees, while acting within the scope of official duty, immunity from liability for any tort, except as waived therein. S.C. Code Ann. § 15–78–20(b). Section 15-78-70(a) provides that "[t]his chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)." However, an employee does not have immunity from suit "if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b). Additionally, SCTCA expressly states that "employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude" is an exception to South Carolina's waiver of immunity. S.C. Code Ann. § 15-78-60(17).

---

[7] Previously, the undersigned found that Defendant Enzor lawfully arrested Plaintiff and did not use excessive force during the course of her arrest. South Carolina recognizes a cause of action for assault and battery "when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995) (internal citations omitted). Therefore, the court could find that Plaintiff's claims for assault and battery fail as a matter of law based on the undersigned's findings that any force used on Plaintiff was lawful and not an unauthorized infliction of purported harm. However, the undersigned will address the merits of SCDPS's argument in the event the court disagrees with the previous analysis.

The undersigned finds that South Carolina district courts and state courts have consistently held that government entities are immune from suits for intentional torts. *See e.g.*, *Smith v. City of Greenwood*, No. 092061-HFF-BHH, 2010 WL 2430952, at *2 (D.S.C. May 13, 2010) *report and recommendation adopted*, No. 8:092061-HFF-BHH, 2010 WL 2382479 (D.S.C. June 14, 2010) ("[C]ourts have been generally consistent in concluding that intentional acts of a governmental employee, intended to do others harm, are deemed outside the scope of their employment and, therefore, constitute an exception to South Carolina's waiver of immunity under the Tort Claims Act.") (citing S.C. Code § 15–78–60 (17)). The *Smith* court recognized that the following courts have all agreed that an employee's intentional acts constitute an exception to South Carolina's waiver of immunity under SCTCA:

> The South Carolina Court of Appeals, *Moore by Moore v. Berkeley County School Dist.*, 326 S.C. 584, 486 S.E.2d 9, 11 (S.C. App. 1997); the Fourth Circuit, *Anthony v. Ward*, 336 Fed. Appx. 311, 316–17 (4th Cir. 2009) ("The jury's finding that Defendants had civilly conspired against Plaintiff was sufficient to remove from the purview of [] SCTCA's protected class of government employees."); and courts of this district, *Moody v. Darnell*, 2010 WL 297810, at *3 (D.S.C. January 21, 2010); *Carthens v. Lewis*, 2009 WL 394299, at *6 (D.S.C. February 17, 2009); *Harkness v. City of Anderson, S.C.*, 2005 WL 2777574, at *4 (D.S.C. October 25, 2005); *McCall v. Williams*, 52 F.Supp.2d 611, 615 (D.S.C. 1999), have all agreed.

*Id.* By definition, assault, battery, and false imprisonment are intentional torts. *See Longshore v. Saber Sec. Servs., Inc.*, 619 S.E.2d 5, 9-10 (S.C. Ct. App. 2005) ("Assault and battery is generally classified as an intentional tort, as contrasted with a tort based on negligence."); *Mellen v. Lane*, 659 S.E.2d 236, 244 (S.C. Ct. App. 2008) (defining assault as "an attempt or offer, with force or violence, to inflict bodily harm on another or engage in some offensive conduct"); *Id.* ("A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient."); *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 651 (S.C. 2006) ("To prevail

on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful."). Therefore, Plaintiff's causes of action for assault, battery, and false imprisonment against SCDPS fail because the elements necessary to prove those causes of action require intentional acts from which it has immunity.

Plaintiff's malicious prosecution cause of action against SCDPS also fails. "[T]o maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Law*, 629 S.E.2d at 648. Here, Plaintiff's cause of action fails because the undersigned explicitly found Defendant Enzor had probable cause to arrest Plaintiff, and also because SCDPS is immune from suit for employees who act with actual malice.

Nevertheless, Plaintiff argues that her case is analogous to the South Carolina district court case of *Kennedy v. Orangeburg Cnty. Sheriff's Office*, No. 5:08-0873-MBS, 2008 WL 4833022, at *1 (D.S.C. Oct. 31, 2008). In the *Kennedy* case, the court, in considering its subject-matter jurisdiction, had to determine "whether Plaintiff's claims, despite being labeled as state law claims, actually present a federal question so as to fall within the artful pleading exception to the well-pleaded complaint rule." *Id.* After referencing SCTCA, the court found that Kennedy's complaint only alleged that an officer's negligent acts occurred while he was acting in the scope of his employment with defendant and did not allege that the officer's "actions were the product of actual malice or any of the other exceptions listed under S.C. Code Ann. § 15-78-60(15)." *Id.* at *2. Therefore, the court determined that Kennedy's claims did not arise under federal law. *Id.*

The *Kennedy* order regarding jurisdiction in no way stands for the proposition that Plaintiff can simultaneously plead that a government employee was acting within the scope of his employment and while doing so committed an intentional tort. The *Kennedy* order is limited to determining federal question jurisdiction. *See id.*

Plaintiff also argues that what she must "prove to prevail, namely, [is] that an objectively reasonable police office[r] would not have arrested [her] based on the totality of the circumstances [Defendant] Enzor confronted." ECF No. 74 at 27. She also maintains that Defendant Enzor's state of mind is inapplicable because the purpose of both the constitutional and tort inquiries are to consider the objective facts and that the court should merely ask whether Defendant Enzor was acting within the scope of his employment by making the traffic stop and arrest. *Id.* Here, Plaintiff blurs the lines between her § 1983 causes of action and her state law claims of assault and battery and does not address whether SCDPS has immunity under SCTCA. At issue is whether SCDPS can be liable for an intentional tort of its employee. Based on the express provisions in SCTCA and the above caselaw, it cannot. Accordingly, the undersigned recommends granting SCDPS's motion for summary judgment and dismissing Plaintiff's causes of action for assault, battery, false imprisonment, and malicious prosecution.

    2.  Negligence, Gross Negligence, and Recklessness Claims

Plaintiff pleaded a fourth cause of action against SCDPS for negligence, gross negligence, and recklessness. ECF No. 1-1 at 11. There, Plaintiff maintains that "Defendant [Enzor] breached the duty of care owed to Plaintiff by his unlawful arrest and use of brutal and excessive force against Plaintiff." *Id.* SCDPS argues that Plaintiff's "vicarious liability" argument, to the extent it applies to Defendant Enzor's intentional conduct, was already addressed in section II. of its brief. ECF No. 65-1 at 18. Additionally, SCDPS maintains that by definition, gross negligence makes SCDPS immune under SCTCA. *Id.* Furthermore, SCDPS

maintains that Plaintiff's cause of action for negligence fails because she has failed to demonstrate a duty owed to her. *Id.* at 18-19. In Response, Plaintiff argues that all of her claims for negligence, gross negligence, and recklessness are "predicated on [] SCDPS's vicarious liability for the torts of its employee." ECF No. 74 at 29. Furthermore, Plaintiff argues that her negligence claims "are cognizable under South Carolina tort law and should go forward because a jury could conclude [that Defendant] Enzor's conduct was objectively unreasonable." *Id.* Plaintiff bases her negligence argument on a § 1983 cause of action. *See id.* at 29-31.

Essentially, Plaintiff is maintaining that Defendant Enzor owed her a duty to act in an objectively reasonable way during the time he pulled her over and during the course of the traffic stop. However, the applicable causes of action for these allegations are false arrest and excessive force. Previously, the undersigned found that Defendant Enzor's actions were reasonable under the Fourth Amendment because there was probable cause to believe that a criminal offense had occurred or was being committed. Additionally, the undersigned found that Defendant Enzor did not use excessive force during Plaintiff's arrest. Because the undersigned already determined that Plaintiff's causes of action for false arrest and excessive force cannot survive, logically, Plaintiff's claim that SCDPS is vicariously liable for Defendant Enzor's actions also cannot survive.

### 3.  Negligent Supervision and Negligent Training Claims

SCDPS maintains that Plaintiff's negligent supervision claim should be dismissed because Plaintiff has failed to establish each of the necessary elements of the claim. ECF No. 65-1 at 20. With regards to negligent training, SCDPS maintains that South Carolina does not recognize a cause of action for negligent training, apart from negligent supervision. *Id.* at 24-30. However, even if a negligent training cause of action did exist, SCDPS argues that Plaintiff has failed to present evidence in support of this claim. *Id.* In response, Plaintiff maintains that the

record supports her causes of action for both negligent supervision and negligent training. ECF No. 74 at 31-34. Plaintiff argues that the following pieces of evidence support her allegations: (1) a portion of witness Bobby Collins's deposition, (2) a portion of Defendant Enzor's testimony, (3) the testimony of her expert witness, and (4) portions of Plaintiff's expert report. *Id.* at 31-34.

In South Carolina, an employer can be independently liable in tort for situations in which "an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008) (citing Restatement (Second) of Torts § 317 (1965)). "[A] plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public." *Id.* This theory rests on the employee's direct negligence. *See id.* In adopting the Second Restatement, the South Carolina Supreme Court has found that the following four-part test is used when determining whether an employer may be liable for negligent supervision if an employee intentionally harms another:

> (i) [the employee] is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or
> (ii) [the employee] is using a chattel of [the employer], and . . . .
> (i) [the employer] knows or has reason to know that he has the ability to control his [employee], and
> (ii) [the employer] knows or should know of the necessity and opportunity for exercising such control.

*Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992).

SCDPS asserts, and the undersigned agrees, that negligent training and negligent supervision are not separate torts in South Carolina. *Gainey v. Kingston Plantation*, No. 4:06-3373-RBH, 2008 WL 706916, at *7 n.4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent

supervision."). In other words, a plaintiff must use the same test, as cited above, to demonstrate a cause of action for either negligent supervision or negligent training. *See James*, 661 S.E.2d at 330 (2008) ("Just as an employee can act to cause another's injury in a tortious manner, so can an employer be independently liable in tort. In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself *negligent in hiring, supervising, or training the employee*, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public.") (emphasis added). Therefore, the undersigned must determine whether a genuine issue of material fact exists to give SCDPS reason and opportunity to control Defendant Enzor.[8]

Bobby Collins, former Director of Investigations for Office of Professional Responsibilities ("OPR"), testified as a witness. ECF No. 74-10. Collins testified that OPR is the "internal affairs component for the South Carolina Department of Public Safety." *Id.* at 6. Plaintiff maintains that Collins' deposition testimony demonstrates SCDPS troopers pose a risk to black citizens due to a culture of racism. ECF No. 74 at 33. Specifically, in his deposition Collins testified that SCDPS' prior Director "mentioned [to Collins] that there was a culture there where there was disparate treatment amongst some of the officers dealing with minorities."

---

[8] SCDPS devotes much of its brief to discussing a You-Tube video that Plaintiff produced in discovery that Plaintiff maintains depicts Defendant Enzor "doing this to someone else years ago." ECF No. 65-1 at 21. Additionally, SCDPS discusses a video of a 2006 encounter of which Defendant Enzor was a part. *Id.* at 22-24. In her Response brief, Plaintiff did not reference either of these encounters and only discusses four key pieces of evidence purporting to support her causes of action. Based on Plaintiff's brief, the undersigned will not analyze the impact of the You-Tube video or the 2006 encounter herein.

*Id.* at 32.[9] Further, Plaintiff maintains that Defendant Enzor's testimony—that he had not been trained on how to deal with argumentative people or diffuse situations—supports her theory of negligence on SCDPS's part. *Id.* at 33. Plaintiff also maintains that her expert's testimony and report concerning the proper type and amount of training police officers should undergo supports her argument.

Plaintiff's evidence, in which a witness testifies and describes SCDPS as having a racist culture is not enough to withstand summary judgment on Plaintiff's negligent supervision cause of action. The same is true for Plaintiff's purported evidence of negligent training. Here, Plaintiff's evidence, at best, alleges that "some" officers, not necessarily Defendant Enzor, demonstrated disparate treatment when dealing with minorities. Further, Defendant Enzor's testimony demonstrates that he was not specifically trained on how to deal with argumentative people so that he could "diffuse situations." Additionally, Plaintiff's evidence from her expert demonstrates what Plaintiff's expert opines is necessary police training. However, none of this evidence pertains to Defendant Enzor's criminal history, work history, or other possible ill behaviors or attributes.

When addressing a negligent supervision cause of action, no South Carolina court has held that evidence of general racist culture within a department is evidence that would put an employer on notice and demonstrate that the employer needs to control a specific employee. Similarly, a demonstration of a lack of a particular training opportunity has not been deemed evidence that would support a claim of negligent training. *See Gilco v. Logan Cnty. Com'n*, No. 2:11-0032, 2012 WL 3580056, at *7 (S.D.W.Va. Aug. 17, 2012) (citing *City of Canton, Ohio v.*

---

[9] Though Collins' testimony is quoted in the argument section of Plaintiff's brief, the undersigned notes that this portion of Collins' testimony is not provided as an Exhibit to the court. *See* ECF No. 74-10.

*Harris*, 489 U.S. 378, 390 (1989)) ("[T]he Supreme Court has counseled that the fact that 'a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [government entity].'"). Rather, courts have examined specific evidence regarding an employee's history, behaviors, or pattern of behavior when examining causes of action for negligent supervision or negligent training. *See e.g., Doe v. Bishop of Charleston*, 754 S.E.2d 494, 500 (S.C. 2014), *reh'g denied* (Mar. 6, 2014) ("This rule has been applied to find an employer liable for negligent supervision when the employee sexually assaulted a minor and the employer had some notice of the employee's prior inappropriate sexual behavior with another minor."); *Bank of New York v. Sumter Cnty.*, 691 S.E.2d 473, 478 (S.C. 2010) (affirming summary judgment where there was no evidence that South Carolina Judicial Department knew or should have known employees posed an "undue risk of harm to the public."); *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292 (S.C. 1996) (holding life insurer could be held liable for negligent supervision of agent whom it knew had mishandled applications in past); *Hamilton v. Charleston Cnty. Sheriff's Dep't*, 731 S.E.2d 727, 730 (S.C. Ct. App. 2012) ("Although [an expert] testified the Department violated nationally accepted standards, the Department provided uncontradicted evidence that it met minimum security standards set for South Carolina. In addition, there is no evidence the Department knew or should have known of the necessity to exercise additional supervision of Officer [employee] to prevent him from harming Hamilton.")[10]; *Kase v. Ebert*, 707 S.E.2d 456, 459 (S.C. Ct. App. 2011) (holding that evidence of

---

[10] Here, unlike in *Hamilton*, Plaintiff does not allege or present any evidence that SCDPS's training violates nationally *accepted* standards or any recognized standards. *See* ECF No. 74 at 33-34. Rather, Plaintiff's expert testified that he found Defendant Enzor's training was "inconsistent with *reasonable police practices* that a police officer anywhere in the United States would receive absolutely no training on how to deal with argumentative individuals." ECF No. 74-12 at 5 (emphasis added). Additionally, Plaintiff's expert's report opines that Defendant

employee's single assault conviction was reason for employer to foresee that employing employee would create an undue risk of harm to the public in negligent hiring case); *Kase*, 707 S.E.2d at 459 (examining employee's poor driving record; insubordinate behavior; marital difficulties and resulting financial problems; and prior erratic behavior before holding that employer was not liable under negligent supervision and retention causes of action); *Doe v. ATC, Inc.*, 624 S.E.2d 447, 451 (S.C. Ct. App. 2005) (examining allegations of employee's previous misconduct of an "inappropriate advance" directed toward a co-worker in a negligent retention case and holding that a single isolated incident of prior misconduct by an employee (of which the employer knew or should have known) may support a negligent retention claim, provided the prior misconduct has a sufficient nexus to the ultimate harm); *Charleston, S.C. Registry for Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP*, 598 S.E.2d 717, 723 (S.C. Ct. App. 2004) (affirming summary dismissal of negligent supervision claim where "the elements necessary to prove negligent supervision of an employee acting outside of the scope of his employment [were] not present in the record" and specifically finding that employee's performance reviews contained in the record did not support cause of action for negligent supervision); *Moore by Moore v. Berkeley Cnty. Sch. Dist.*, 486 S.E.2d 9, 13 (S.C. Ct. App. 1997) ("Absent some evidence indicating notice to the District of [employee's] inappropriate sexual proclivities, there is no basis to conclude the District knew or should have known of the necessity for supervising her conduct outside the classroom."); *Doe by Doe v. Greenville Hosp. Sys.*, 448 S.E.2d 564 (S.C. Ct. App. 1994) (holding hospital had prior notice of inappropriate sexual behavior on part of male employee so as to be liable for negligent hiring and supervision); *see also James*, 661 S.E.2d at 331 (acknowledging that often pieces of evidence "such as a prior

---

Enzor's "*arrest* of Mr. Newkirk was inconsistent with generally accepted police practices." ECF No. 74-12 at 30 (emphasis added).

driving record, an arrest record, or other records of past mishaps or misbehavior by the employee" are offered to prove a negligent hiring, training, supervision, or entrustment claim).

Some evidence relating specifically to the employee—such as the employee's history, traits, and past behaviors—that could put the employer on notice that the employer has reason to control or train its employee must be present in a case concerning an employer's direct negligence. Here, no such evidence exists. Therefore, the undersigned recommends granting SCDPS's Motion for Summary Judgment on Plaintiff's causes of action for negligent supervision and negligent training.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant Enzor's Motion for Summary Judgment, ECF No. 64, be *granted* and this case against him be dismissed based on the undersigned's recommendation that Defendant Enzor is entitled to qualified immunity and Eleventh Amendment Immunity. Additionally, the undersigned recommends *granting* SCDPS's Motion for Summary Judgment, ECF No. 65, dismissing Plaintiff's state law causes of action against SCDPS.

IT IS SO RECOMMENDED.


April 8, 2015                                        Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**