IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Catherine B. Newkirk, ) | |
| ) | |
| Plaintiffs, ) | C.A. No. 4:13-cv-01635-RMG |
| ) | |
| v. ) | |
| ) | **ORDER** |
| James B. Enzor, individually and as an ) | |
| officer of the South Carolina Highway ) | |
| Patrol and the South Carolina Department ) | |
| of Public Safety, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 and the South Carolina Tort Claims Act, alleging that Defendants, an officer of the South Carolina Highway Patrol and the South Carolina Department of Public Safety, are liable for constitutional violations and certain torts during a traffic stop on October 14, 2012. Defendants filed a Motion for Summary Judgment on November 25, 2014 (Dkt. No. 64) and December 1, 2014 (Dkt. No. 65) respectively. Plaintiff filed a Response to both motions on December 18, 2014 (Dkt. No. 74), and Defendants filed a Reply on January 5, 2015 (Dkt. No. 75).

The case is now before this Court on the Report and Recommendation ("R&R") of the Magistrate Judge, submitted April 8, 2015 (Dkt. No. 80), which recommends that both Defendant Enzor's Motion for Summary Judgment (Dkt. No. 64) and Defendant South Carolina Department of Public Safety ("SCDPS")'s Motion for Summary Judgment (Dkt. No. 65) be granted. Defendant Enzor filed objections to the R&R on May 7, 2015 (Dkt No 86). Plaintiff filed objections to the R&R on May 7, 2015 (Dkt. No. 86), and Defendant SCDPS filed a reply to Plaintiff's objections on May 26, 2015 (Dkt. No. 88). For the reasons stated herein, the Court declines to adopt the R&R except as to the background facts given at pages 2-3 and the analysis

of Eleventh Amendment immunity at page 20. The Court GRANTS in part and DENIES in part the Motion for Summary Judgment as to Defendant SCDPS, and GRANTS in part and DENIES in part the Motion for Summary Judgment as to Defendant Enzor.

## Background

The R&R ably recites the relevant facts, and it is unnecessary to review the details of the complaint, depositions, and arrest reports that constitute the factual record to this point. In brief, Plaintiff Catherine Newkirk was driving, with her husband Jerome Newkirk, on Interstate 95, when Ms. Newkirk was pulled over by Defendant Enzor for exceeding the speed limit in a work zone. After reviewing her license and registration, Enzor wrote a ticket, walked back to the Newkirks' car, and passed the license and registration back to the driver, holding the ticket itself in his hand. Although he did not give the ticket to Ms. Newkirk, he described it as being written for 64 mph, rather than the 77 mph (in a 55 speed limit zone). (Dkt. No. 64-2 at 8:20-8:30).[1]

After disputing the ticket and asking if she had been pulled over because of racial discrimination, not speeding, Ms. Newkirk was removed to the side of the road and arrested. Mr. Newkirk, who remained in or just to the side of the Newkirks' vehicle while speaking to his wife and the officer, was also arrested by Enzor. Much of the encounter was captured on video, although the sound quality is poor and statements by the parties are difficult to hear. (Dkt. Nos. 64-2; 64-3; 64-4). Both of the Newkirks filed suit against Enzor and SCDPS, and both cases were removed to this Court by Defendants. (*See* Dkt. No. 1; Civil Action No. 4:13-cv-1634). Both complaints allege that both Defendants are liable for violation of the Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983. Ms. Newkirk also brought seven claims against SCDPS, arguing that SCDPS is vicariously liable for assault; battery; negligence, gross

---

[1] The parties refer to Plaintiff's speed as either 77 or 72; the video's audio is not clear enough to clearly discern the number given.

negligence, and recklessness; intentional infliction of emotional distress; malicious prosecution; and false imprisonment; and directly liable for negligent supervision and training of Enzor. As the intentional infliction of emotional distress claim was voluntarily dismissed in the summary judgment pleadings, the R&R and this order address the constitutional allegations against Enzor and the six remaining tort claims against SCDPS.

## Analysis

### A. Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1). To the extent Petitioner fails to point to a specific error in the R & R and simply makes conclusory objections, the Court need not conduct a *de novo* review. *Smith v. Washington Mut. Bank FA*, 308 Fed.App'x 707, 708 (4th Cir. 2009) ("The court need not conduct de novo review . . . 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.'") (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982)).

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining

3

whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

**B. Discussion**

1. <u>Section 1983 Unlawful Arrest Claim Against Defendant Enzor</u>

With respect to Plaintiff's Section 1983 unlawful arrest claim, Defendant Enzor first argues that because he had probable cause to arrest Ms. Newkirk based on her violation of the speed limit, it would be impossible for him to have violated her civil rights to be free of unreasonable arrest and excessive force in retaliation for her comment that she felt Enzor's treatment of her was discriminatory. Second, he argues that even if there is a constitutional right to be free of unreasonable arrest that perseveres in a case where probable cause exists to arrest on a validly observed legal violation, such a constitutional right has not been clearly established by the Fourth Circuit or the Supreme Court, and he is therefore entitled to qualified immunity. (Dkt. No. 64-1 at 5-6). The Court finds that Plaintiff has submitted evidence of facts sufficient to

4

support a claim that she was subject to a retaliatory, unconstitutional arrest, despite the existence of probable cause for an arrest for breaking the speed limit.

The Supreme Court has indeed established that even a very minor traffic violation committed in the presence of an officer, or probable cause that such a violation occurred, can provide a legal basis for a detainment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). And Plaintiff does not dispute that she was driving over the speed limit when she was pulled over by Defendant Enzor. Therefore, if Enzor were to be found, as a matter of fact, to have arrested Plaintiff only for speeding, Plaintiff's claim would certainly fail. And of course, if Enzor were found by a jury to have arrested Plaintiff because she questioned whether she was being discriminated against, and no separate and alternate probable cause for the arrest existed, Plaintiff would prevail. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (finding that as a general matter, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out"); *City of Houston, Tex. v. Hill*, 482 U.S. 451, 471 (1987) (referencing "the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint"); *Hayes v. City of Seat Pleasant, Md*, 469 Fed. App'x 169 (4th Cir. 2012) (finding that a verbal inquiry or challenge may not sustain a defendant's motion for summary judgment on the grounds that the plaintiff was "hindering" an officer's work); *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013) (finding that a city ordinance barring interference with a police officer's duties was unconstitutionally vague, and that a plaintiff who argued with a police officer arresting an individual had a valid First Amendment claim despite probable cause for violation of the unconstitutional law). The question here is whether, taking all facts in a light most favorable to Plaintiff, Enzor violated her rights by coming to a clear decision *not* to arrest her based on the

5

speeding violation and then, upon hearing Plaintiff's opinion of him, effectuating a retaliatory arrest based solely on her speech. The Court finds that Plaintiff has alleged facts sufficient to support such a Constitutional claim.

The Supreme Court has not addressed the question of whether independent probable cause cures an otherwise retaliatory arrest, but it has found that plaintiff may not plead a retaliatory prosecution claim against a law enforcement officer without also pleading an absence of probable cause for the charge. *Hartman v. Moore*, 547 U.S. 250 (2006). The Court explained that "[s]ome sort of allegation, then, is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity. And at the trial stage, some evidence must link the allegedly retaliatory official to a prosecutor whose action has injured the plaintiff. The connection, to be alleged and shown, is the absence of probable cause." *Hartman*, 547 U.S. at 263. Lower courts have since split as to whether *Hartman*'s analysis is applicable to retaliatory arrest cases.[2]

*Hartman*'s underlying concern, which is a substantial one, is that to generally allow First Amendment challenges to legal actions that are supported by probable cause and therefore would have taken place regardless of any First Amendment speech would invite the expenditure of significant legal resources looking behind the motives of legally valid or even necessary prosecutions, simply because the subject of the arrest or prosecution had a verbal disagreement with the officer.

Certain courts have extended this logic to situations of arrest; for example, the Fifth Circuit decision in *Keenan v. Tejeda* stated in dicta that where probable cause for arrest does

---

[2] *See* John Koerner, *Between Healthy and Hartman: Probable Cause in Retaliatory Arrest Cases*, 109 Colum. L.Rev. 755, 775, 776 (2009) (stating that "Retaliatory arrest case law is a mess, with some courts siding entirely with *Hartman*, others rejecting [the application of] *Hartman* [to retaliatory arrest matters] outright, and still others having yet to take a position" and noting the more common conclusion is that a plaintiff plead and prove probable cause).

6

exist, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." 290 F.3d 252, 261-62 (2002). In *Elkins v. Broome*, a North Carolina district court went further, relying on *Keenan* to grant summary judgment to a defendant officer who, after a "heated discussion" about an accident, arrested the plaintiff for failing to promptly mail in car insurance information when asked to do so, pursuant to a law prohibiting "delaying a police officer in the performance of his duties." *Elkins v. Broome*, 328 F. Supp. 2d 596, 597-98 (M.D.N.C. 2004) *aff'd*, 122 F. App'x 40 (4th Cir. 2005).

The video evidence submitted in this case, however, illustrates the type of factual scenario where other Circuit courts, and this district, have found that the right to be free of retaliatory arrest does persist even when technically a basis to arrest can be found. Plaintiff argues, and both video evidence and deposition testimony from Defendant Enzor shows, that prior to speaking with Ms. Newkirk, Enzor planned on handling the speeding violation by actually decreasing the speed listed on the ticket that he wrote, so that Ms. Newkirk would be spared the inconvenience of attending traffic court and could simply mail a payment to handle the ticket. (Dkt. Nos. 64-2; 74 at 3). By the time he was standing at the stopped car for the second time, ticket in hand, he had considered all of the evidence before him, reasonably exercised his discretion not to arrest Ms. Newkirk, or even to require that she attend court, published his decision by writing the lower violation on the ticket, and verbalized it to Mr. and Ms. Newkirk. And upon Ms. Newkirk's mention of the word discrimination, Enzor immediately responded by saying "Ma'am, step out of the car." No cause for his sudden decision to arrest her is evident on the video, and Enzor's only explanation for such a change is the halfhearted claim, in a footnote of his motion, that Ms. Newkirk "refuse[d]" to accept the ticket. (Dkt. No. 11 at 11

n.2). No such refusal can be seen or heard on the video, although Enzor would of course be entitled to argue this set of facts to a jury if this claim went forward.

The Court finds that this case is distinguishable from *Elkins, Keenan*, and other factual scenarios where an officer appears to be motivated by *both* a legal reason to arrest (probable cause for a crime) *and* an illegal reason (retaliation for a plaintiff's speech). Here, taking the facts in the light most favorable to the Plaintiff, Enzor was motivated solely by a retaliatory impulse; he was no longer pursuing a law enforcement objective when he effectuated the arrest. *See McCoy*, 929 F. Supp. 2d at 559 ("it is conceptually possible that an officer effectuating an otherwise valid arrest (i.e., an arrest supported by probable cause) may be motivated by a desire to *retaliate* against the arrestee's assertion of First Amendment rights. In other words, merely showing that the Officer Defendants acted with probable cause may not foreclose the possibility of a First Amendment violation. "); *Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002) (finding that despite the fact that "a respectable argument [could] be made" that the officer had probable cause, "[t]aken in the light most favorable" to the plaintiff, the record "would entitle a jury to find that the arrest was the product of improper motive.")[3]

Furthermore, the Supreme Court's decision in *Hartman*, requiring a plaintiff to allege a lack of probable cause in bringing an unlawful prosecution claim, is inapplicable here. The rationale adopted by the Supreme Court in *Hartman* was that the separation between an ill-motivated police officer and a prosecutor's office erases any presumption that the officer's bias actually resulted in the later prosecution, unless the prosecution itself is alleged to be unsupported by probable cause. As the video in this case shows, where the person accused of retaliatory motive *is* the person accused of perpetrating the false arrest, no such "gap" exists.

---

[3] The Fourth Circuit has not addressed the issue of overlapping motives – probable cause and a retaliatory impulse – for an arrest.

8

Because of this continuity, and because the video shows a clear break between Enzor's law enforcement activity (writing a ticket) and his retaliatory activity (applying physical force to and arresting Plaintiff), *Hartman* is inapplicable, and a potentially valid constitutional claim exists.

However, the Court must find as a matter of law that Enzor is entitled to qualified immunity, as the right to be free of a retaliatory arrest when separate probable cause exists to arrest the plaintiff has not been clearly enough established to require a reasonable officer to be aware of it. Government officials performing discretionary functions are shielded from liability for money damages where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Qualified immunity is available to an arresting officer where a reasonable officer in his or her position could have believed that arresting the plaintiff was lawful in light of clearly established law and the information the officer possessed. *Anderson v. Creighton*, 483 U.S. 635 (1987). Specifically, Enzor's position is that although in general the right to be free of unconstitutional arrest is well established, the "circumstances of the particular case" and the "specific context" should guide the Court in determining whether qualified immunity is applicable, since "the proper focus is not upon the right at its most general abstract level, but at the level of its application to the specific conduct being challenged." (Dkt. No. 64-1 at 7 (quoting *Wiley v. Doory*, 14 F.3d 993 (4th Cir. 1994))).

In 2012, the Supreme Court reviewed a case in which Secret Service agents arrested an individual upon witnessing him criticize the Vice President (an activity protected by the First Amendment) and make a materially false statement to a federal official (a federal crime). There, the Court explained that:

> We granted certiorari on two questions: whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest,

9

> and whether clearly established law at the time of Howards' arrest so held. See 565 U.S. ——, 132 S.Ct. 815, 181 L.Ed.2d 525 (2011). If the answer to either question is "no," then the agents are entitled to qualified immunity. We elect to address only the second question. We conclude that, at the time of Howards' arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment. We, therefore, reverse the judgment of the Court of Appeals denying petitioners qualified immunity.

*Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). Because the Fourth Circuit has not addressed this issue since *Reichle*, the Supreme Court has not revisited it, and the sole District of South Carolina case stating that a First Amendment arrest claim may lie even in the presence of probable cause (*McCoy*) was not decided until six months after the instant arrest, Enzor is entitled to qualified immunity on the unlawful arrest claim and it is therefore dismissed.

2. Section 1983 Excessive Force Claim Against Defendant Enzor

Plaintiff also alleges that the force Enzor applied in making the arrest was excessive and unconstitutional. Enzor seeks summary judgment on this claim on the grounds that the amount of force applied was reasonable as a matter of law and that he is also entitled to qualified immunity. (Dkt. No. 64-1 at 17; 12-16). The Court disagrees with both assertions and denies the motion for summary judgment as to the excessive force claim.

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person. *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997), citing *Graham v. Conner*, 490 U.S. 386, 388 (1989). Fourth Amendment claims of excessive use of force during an arrest are considered under an "objective reasonableness" standard. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011); *Culosi v. Bullock*, 596 F.3d 195, 201 (4th Cir. 2010); *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008); *Smith v. Kendall*, 369 Fed. App'x 437 (4th Cir. Mar. 8, 2010). This test requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8

(1985); *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007); *White v. Town of Chapel Hill*, 899 F.Supp. 1428, 1435 (M.D.N.C. 1995), *aff'd*, 70 F.3d 1264 (4th Cir. 1995); *Sweatt v. State of Maryland* 888 F.2d 1387 (4th Cir. 1989). What is objectively reasonable depends on what conditions exist at the time the alleged excessive force is used, recognizing that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham v. Connor*, 490 U.S. at 396; *Waterman v. Batton*, 393 F.3d 471, 476-477 (4th Cir. 2005); *see also Greenidge v. Ruffin*, 927 F.2d 789 (4th Cir. 1991).

When considering a police officer's actions under this "objective reasonableness" standard, the Court must consider the circumstances of the particular case, including the severity of the crime committed, whether the subject posed an immediate threat to the safety of the police officer or others, and whether the subject was actively resisting arrest or attempting to evade arrest. *Graham*, 490 U.S. at 396; *see Foote v. Dunagan*, 33 F.3d 445, 447-448 (4th Cir. 1994); *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988); *Waller v. City of Danville*, 212 Fed. App'x 162, 169 (4th Cir. 2006). In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed. *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996). Considering the evidence in the light most favorable to the Plaintiff, the Court does not find that the Defendant Enzor is entitled to summary judgment on this claim pursuant to this standard. A review of the video of the incident at issue, as well as Enzor's own testimony, confirms that prior to the use of force, Ms. Newkirk had been cooperative during the traffic stop and was not acting in a threatening manner. In fact, she can be heard stating clearly, calmly, and affirmatively that "I'm not resisting arrest" as she stands still with her hands at her sides at the back of the car. (Dkt. No. 64-2 at 9:35). Nonetheless, as can clearly be seen on the video, Enzor turned rapidly to physical force, and, according to Plaintiff, elected to use force out of anger,

11

frustration, and retaliation for her speech. Considered in the light most favorable to the Plaintiff, the evidence shows that Newkirk did not pose an immediate threat to Enzor's safety at that time, nor was she actively resisting arrest or attempting to evade arrest. Newkirk had not been charged with a crime, and Enzor had written her a ticket with a downward modification to spare her the trouble of appearing in court. Enzor's assertion that "she was noncompliant" and that the force he exercised was "minimal" (Dkt. No. 64-1 at 15) are factual conclusions subject to dispute. And the fact that Plaintiff admitted that she "did not voluntarily move [her] body in a manner that was compliant" with Enzor's pulling on her arms (*id.* at 14) is not enough to establish as a matter of law that she was actively resisting arrest. The claim is therefore inappropriate for disposition on summary judgment.

With respect to qualified immunity, Defendant Enzor takes the position that the arrest itself was legal and that therefore the "minimal" amount of force he used was justified and he is entitled to qualified immunity. Whether an officer has used excessive force is analyzed under a standard of objective reasonableness. *Scott v. Harris,* 550 U.S. 372, 381 (2007); *see also Kentucky v. King,* 131 S.Ct. 1849, 1859 (2011). And the disputed facts recited above make summary judgment on the basis of qualified immunity inappropriate. This is because "[d]isputed facts are treated no differently in this portion of the qualified immunity analysis than in any other context." *Vathekan v. Prince George's Cnty.,* 154 F.3d 173, 180 (4th Cir. 1998) (citing *Buonocore v. Harris,* 65 F.3d 347, 359 (4th Cir. 1995) and *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992)). Accordingly, "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." *Id.*

As the Supreme Court has made clear, this conflict between subjective views of a series of events does not prove the Plaintiff's case. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz,* 533 U.S. 194, 195 (2001). "If courts refused to permit the use of proportionate force in these circumstances, we would be inviting any suspect who is unhappy about an arrest to resist that arrest in the hopes that the officers will simply desist rather than risk liability." *Brown v. Gilmore*, 278 F.3d 362, 369-70 (4th Cir. 2002). However, because certain relevant details of the encounter are not visible on the video available, including the verbal exchanges between the parties and the physical struggle that took place after they moved out of view of the video, and because they are disputed by the Plaintiff, the Court cannot rely on Defendants' description of the events for purposes of its summary judgment analysis. And as to the events that are visible on the video, the Court is unprepared to state, as a matter of law, that the force used was not excessive. Summary Judgment on a Rule 56 motion would therefore be inappropriate on this issue and Defendant Enzor's motion is denied as to the excessive force claim.

3. State Tort Claims Against SCDPS

Plaintiff has, upon further review of the R&R, agreed to drop her negligent training/supervision claims. (Dkt. No. 87 at 3). However, she disputes the R&R's findings on the remaining tort claims: assault, battery, negligence/gross negligence/recklessness, malicious prosecution, and false imprisonment. Her complaint alleges facts to support the elements of each of these claims. (*See* Dkt. No. 1; *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528 (D.S.C. 2014) (to prove a negligence claim, a plaintiff must show a duty of care, a breach of the duty, and damage proximately caused by the breach); *Roberts v. City of Forest Acres*, 902 F.

13

Supp. 662, 671, 673 (D.S.C. 1995) (to prove an assault, a plaintiff must show they "ha[ve] been placed in reasonable fear of bodily harm by the conduct of the defendant," to prove battery that there was "actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree"); *Goodwin v. Metts*, 973 F.2d 378 (4th Cir. 1992) ("to establish the tort of malicious prosecution under South Carolina law, a plaintiff must show: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in the instituting or continuing of such proceedings; (5) lack of probable cause; and (6) resulting injury to the plaintiff"); and *Law v. S. Carolina Dep't of Corr.*, 629 S.E.2d 642, 651 (S.C. 2006) ("To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful."))

As Plaintiff explains in her Response, whether Enzor acted in a reasonable manner in electing to use force to effectuate the arrest will be relevant not only to the unlawful arrest claim and excessive force claim, but to the tort claims as well. The objective reasonableness of the force applied will determine whether Plaintiff proves the elements of her assault and battery claims; i.e. whether Plaintiff was in reasonable fear of bodily harm and whether Enzor subjected her to unauthorized violence. *See Roberts v. City of Forest Acres*, 902 F. Supp. 662 (D.S.C. 1995). (Dkt. No. 1 at 10, alleging bruising, swelling, pain, mental anguish, emotional distress, and medical and other expenses). It will also be relevant in determining whether Enzor breached a duty of reasonable care (*id.* at 11), and whether he was motivated by a retaliatory impulse in maliciously pursuing criminal proceedings against Plaintiff (*id.* at 13).

### A. Eleventh Immunity as to All Tort Claims

Defendant SCDPS focuses on Eleventh Immunity, arguing that Enzor's alleged behavior was so outrageous as to be entirely outside the scope of his employment, and therefore not covered by the SCTCA. (Dkt. No. 65-1 at 10- 27). The Court agrees with Plaintiff that Defendant SCDPS is not entitled to Eleventh Amendment immunity as a matter of law and that the claims may proceed.

The state of South Carolina has waived its Eleventh Amendment right to sovereign immunity against tort claims, and therefore allows suit against itself and its agencies, rather than against employees, pursuant to the South Carolina Tort Claims Act ("SCTCA," S.C. Code Ann. § 15-78-20 et seq.). The SCTCA was passed in 1986 in order to implement the South Carolina Supreme Court's 1985 decision, *McCall by Andrews v. Batson*, 285 S.C. 243, which abolished the doctrine of complete sovereign immunity. However, Section 15-78-60 of the SCTCA states that a "governmental entity is not liable for a loss resulting from . . . employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." Defendant SCDPS contends that because gross negligence, recklessness, malicious prosecution, and false imprisonment are all traditionally considered "intentional torts," and because Plaintiff's position is that Defendant Enzor "is a racist, and his actions from the very beginning of the encounter were intentional and based on malice," that the listed tort claims are forestalled by § 15-78-60.

SCDP's view attempts to shoehorn traditional notions of "intent" into an exemption that discusses "actual fraud, actual malice, intent to harm, or . . . moral turpitude." These statutory phrases are terms of art clearly intended to apply to specific situations where an employee's

15

behavior is so wildly beyond what could have been anticipated or managed by his or her employer that the state cannot reasonably be held responsible for it. *Elder v. Gaffney Ledger*, 341 S.C. 108, 117 (2000) ("As noted by the United States Supreme Court, the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term. *Harte-Hanks, supra*, 491 U.S. at 666, 109 S. Ct. at 2685, n. 7."); *McBride v. School District of Greenville County*, 389 S.C. 546 (Ct. App. 2010) (finding that malicious prosecution tort claim was not blocked by § 15-78-60 because "actual malice" is not an element of malicious prosecution). Similarly, an intentional action sufficient to support an intentional tort claim is not necessarily coterminous with the "intent to harm" exemption found in the SCTCA.

The governmental entity claiming an exception to the waiver of immunity under the Tort Claims Act has the burden of establishing any limitation on liability. *Faile v. S.C. Dep't of Juvenile Justice*, 350 S.C. 315, 324 (2002). At this point, SCDPS has failed to do so, and these claims are inappropriate for disposition on a Rule 56 motion. SCDPS also argues that, based on Plaintiff's testimony, Enzor's "actions were outrageous, far outside any reasonable conception of 'scope of duty or employment.'" (Dkt. No. 88 at 10). This may be so, but because Defendants dispute that characterization, determining the actual nature of Enzor's actions would be premature at this stage, and there remains a genuine issue of material fact to be determined by a jury.[4] The federal rules' liberal pleading requirements allow a plaintiff to plead alternative theories of relief, even if these theories are inconsistent with one another. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

---

[4] The fact that Plaintiff stated in deposition that he did not believe Defendant Enzor's actions were "part of his job" is irrelevant to this analysis. (*See* Dkt. No. 89 at 14). A layman's understanding of "scope of employment" is not necessarily coextensive to its statutory meaning. Plaintiff is neither a jury nor a judge and his testimony goes to the factual development of the case, not to mixed questions of fact and law. *E.g. Miller v. City of Camden*, 329 S.C. 310, 314 (1997) (Where there are factual issues regarding a defendant's role as a volunteer, the existence of a duty becomes a mixed question of law and fact to be resolved by the fact-finder) (collecting cases).

Therefore, even if a jury were only be able to find for Plaintiff on her constitutional claims *or* on one or more of her tort claims, none of them are appropriate for resolution pursuant to Rule 56.

SCDPS also argues that because Enzor's alleged behavior is intentional and wrongful, it is "outside the scope of employment." (Dkt. No. 89 at 18-12). Of course, any type of misconduct is, in the most philosophical sense, always outside the "scope of employment," in that a government employee would never been employed for the purpose of undertaking illegal actions. Sweeping with so broad a brush, however, the § 15-78-60 exception would consume the rule, and specifying the exceptions for actual malice, fraud, and moral turpitude would be unnecessary if *any* intentional action by an employee shielded the government from liability. The SCTCA specifies that "[l]iability for acts or omissions under this chapter is based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." S.C. Code. Ann. § 15-78-20. Applying traditional tort concepts to the five claims in dispute, as well as South Carolina caselaw interpreting the exception provision of the SCTCA, Plaintiff's claims are not precluded as a matter of law. The Court therefore denies summary judgment on the state tort claims on the basis they are barred by the Eleventh Amendment because Enzor allegedly operated outside of the scope of his employment.

### B. State Tort Assault and Battery Claims

Under South Carolina law, "an assault occurs when a person who has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Jones v. Winn-Dixie Greenville, Inc.*, 456 S.E.2d 429, 432 (S.C. Ct.App. 1995). It is well settled that "[a]lthough a law enforcement officer is privileged to use lawful force, he is

17

nevertheless liable for assault if he uses force greater than is reasonably necessary under the circumstances." *Moody v. Ferguson*, 732 F.Supp. 627, 632 (D.S.C. 1989).

Since there are material factual disputes regarding the circumstances of the encounter between Plaintiff and Enzor and the reasonableness of the officer's exercise of force, summary judgment would be inappropriate on the assault and battery claims. Therefore, the Court denies summary judgment as to the assault and battery claims.

### C. State Tort Claims of Malicious Prosecution and False Imprisonment

Under South Carolina law, an element of the cause of action of malicious prosecution is lack of probable cause. *Goodwin*, 973 F.2d at 383. Similarly, in a claim of false imprisonment under South Carolina law, the plaintiff must demonstrate that the restraint was "unlawful." *Law*, 629 S.E.2d at 651. Because the record clearly establishes the presence of probable cause on a speeding violation, the Court finds that Plaintiff cannot satisfy the elements of either a malicious prosecution or false imprisonment claims. Consequently, the Court grants summary judgment on the malicious prosecution and false imprisonment claims.

### D. State Tort Negligence Claims

Finally, SCDPS also argues that as to the negligence claims, Plaintiff has failed to identify a duty of care that Enzor had to her, and that to the extent such a duty could exist, it is barred by the "public duty rule," which forecloses members of the general public from suing government officials for failure to perform their assigned duties. As to the public duty rule, it provides that "a statute creating duties of office imposes on the public officer no duty of care towards individual members of the public." *Rayfield v. S. Carolina Dep't of Corr.*, 374 S.E.2d 910, 915 (S.C. Ct. App. 1988). However, if an officer engages in an act toward a specific person, such as an arrest, the public duty rule does not relieve the officer of the responsibility of

acting with due care. *Cooke v. Allstate Mgmt. Corp.*, 741 F. Supp. 1205, 1210 (D.S.C. 1990). In South Carolina, troopers are generally held to a duty of care to those injured by their law enforcement activities. *See Clark v. South Carolina Dep't of Public Safety*, 608 S.E.2d 573, 575 (S.C. 2005) (finding that whether a SCDPS trooper was grossly negligent in failing to end a high-speed chase that resulted in a fatality was a question properly submitted to the jury). The Court therefore denies summary judgment on the negligence claims.

## Conclusion

The Court has reviewed the R&R, the full administrative record in this matter and the relevant legal authorities. The Court **ADOPTS** pages 2-3 and page 20 of the R&R (Dkt. No. 80), **DENIES** in part and **GRANTS** in part the Motion for Summary Judgment as to Defendant Enzor (Dkt. No. 64), and **DENIES** in part and **GRANTS** in part the Motion for Summary Judgment as to Defendant SCDPS. (Dkt. No. 65). The case will therefore proceed on the Section 1983 excessive force claim claims against Defendant Enzor, and on the state tort claims of assault, battery, and negligence/gross negligence/recklessness. The claims for unlawful arrest, malicious prosecution, and false imprisonment are dismissed.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

June _17_, 2015
Charleston, South Carolina