IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISON

| | | |
|---|---|---|
| Jerome C. Newkirk, Sr., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | C/A NO.: 2:13-cv-1634-RMG-KDW | |
| ) | | |
| James B. Enzor, individually and as ) | | |
| an employee and agent of the South ) | | |
| Carolina Department of Public ) | | |
| Safety; South Carolina Department ) | | |
| of Public Safety, ) | | |
| Defendants. ) | **DEFENDANT JAMES B. ENZOR'S** | |
| ─────────────────────────) | **RESPONSE IN OPPOSITION TO** | |
| ) | **PLAINTIFFS' MOTION IN LIMINE** | |
| Catherine B. Newkirk ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | C/A NO.: 2:13-cv-1635-RMG-KDW | |
| ) | | |
| James B. Enzor, individually and as ) | | |
| an employee and agent of the South ) | | |
| Carolina Department of Public ) | | |
| Safety; South Carolina Department ) | | |
| of Public Safety, ) | | |
| Defendants. ) | | |
| ─────────────────────────) | | |

TO:     RICHARD A. HARPOOTLIAN, ESQUIRE, COUNSEL FOR PLAINTIFF

Defendant James B. Enzor, by and through his undersigned counsel, submits this response in opposition to Plaintiffs' Motion in Limine (ECF # 124 in 2:13-cv-01634-RMG and ECF # 117 in 2:13-cv-01635-RMG) filed February 14, 2017.

**STATEMENT OF THE CASE**

The above-captioned actions are civil claims brought pursuant to 42 USC § 1983 and the South Carolina Tort Claims Act by Plaintiffs Catherine Newkirk and Jerome Newkirk

1

("Plaintiffs") alleging civil rights violations by Defendant James B. Enzor ("Enzor") and tort claims against the South Carolina Department of Public Safety.

By email dated October 9, 2014, the undersigned counsel for Defendant Enzor produced a copy of expert witness Brian S. Batterton's October 9, 2014 report to counsel for Plaintiffs and counsel for Defendant SCDPS[1]. On October 10, 2014, counsel for Defendant Enzor filed a document[2] in connection with each Newkirk case identifying Brian S. Batterton as an expert witness in the fields of law enforcement described in his report. Copies of Batterton's C.V. and training records were attached thereto and are included herewith as Exhibit B.

On February 6, 2017, this court issued an Order (ECF #115 in 2:13-cv-01634-RMG and ECF #108 in 2:13-cv-01635-RMG) consolidating the two Newkirk cases for trial and disposition of any remaining pre-trial issues. On February 7, 2017, this court issued an Amended Order (ECF #110 in 2:13-cv-01635-RMG) amending its previous Order (ECF #89) disposing of the summary judgment motions filed by both Defendants.

On February 14, 2017, Plaintiffs filed a Motion in Limine (ECF #124 in 2:13-cv-01634-RMG and ECF #117 in 2:13-cv-01635-RMG) seeking to exclude certain opinions set forth in Batterton's October 9, 2014 report. For reasons more fully set forth below, Defendant Enzor opposes Plaintiffs' Motion in Limine.

## DISCUSSION

Plaintiffs seek to exclude paragraphs 22, 23, 24, 26, and 28 of Batterton's report on the asserted grounds that said paragraphs contain conclusions based on disputed facts; paragraphs 22, 24, 25, 26, 27, and 28 on the asserted grounds that they offer ultimate legal conclusions; paragraphs 22, 23, 24, and 28 on the asserted grounds that they reach inappropriate credibility

---

[1] Email from Samuel F. Arthur, III to counsel dated 10/9/2014 with Batterton Report, attached as Exhibit A.
[2] See ECF #60 in 2:13-cv-01634-RMG and ECF #60 in 2:13-cv-01635-RMG.

determinations; and paragraphs 22, 23, 24, and 26 on the asserted grounds that contain speculation as to a witness' motive or intent.[3] Plaintiffs further assert that all of these identified paragraphs contain opinions that "run the risk of misleading the jury and confusing the issues."[4] Plaintiffs further argue that the opinions set forth in Batterton's report are "improper and inadmissible as opinions that essentially summarize or determine facts and then opine on the existence of probable cause based upon the expert's interpretation of the facts."[5]

Defendant Enzor respectfully opposes Plaintiffs' Motion in Limine and asserts that a closer review of Batterton's report reveals that (1) he has in excess of twenty years of law enforcement experience and conducts policy and legal training for law enforcement agencies and school officials throughout the United States, including the provision of training relating to legal issues in police use of force, police misconduct, arrest, and constitutional law issues for law enforcement officers and (2) his opinions are not speculative inferences related to common concepts, but rather analytical assessments of the conduct of Enzor in light of Batterton's extensive knowledge and experience in the fields of law enforcement, law enforcement training and supervision, and review of officer conduct based upon the factual record provided by the materials he reviewed, including the OPR report and related videos, Plaintiffs Complaints, and the deposition of Trooper Enzor.

The admission of expert testimony is addressed by Rule 702 of the Federal Rules of Evidence. The United States Court of Appeals for the Fourth Circuit, in the case of *Kopf v. Skrym*, 993 F. 2d. 374 (1993), discussed Rule 702 FRE and its application in the context of a 42 U.S.C. § 1983 excessive force claim. In *Kopf*, the Fourth Circuit stated:

>   Fed.R.Evid. 702 provides:

---

[3] ECF #124 and ECF #117 at pages 2 and 3.
[4] Id.
[5] ECF #124 and ECF #117 at page 5.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Article VII of the Federal Rules of Evidence eliminated many formalistic barriers imposed by the common law on the introduction of opinion and expert testimony. Rule 702 is broadly interpreted, and helpfulness to the trier of fact is its "touchstone." *Friendship Heights Associates v. Koubek,* 785 F.2d 1154, 1159 (4th Cir.1986). Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror. *Persinger v. Norfolk & Western Railway Co.,* 920 F.2d 1185, 1188 (4th Cir.1990) (testimony about how difficult it is to lift heavy things is not "helpful" and is thus excludable). Even then, the erroneous admission of such testimony is usually harmless: an astronomer's explanation that the days are longer in the summertime may not assist the jury, but it is also not likely to cause an erroneous finding of fact. "Trouble is encountered only when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Scott v. Sears, Roebuck & Co.,* 789 F.2d 1052, 1055 (4th Cir.1986).

[2] The witness' qualifications to render an expert opinion are also liberally judged by Rule 702. Inasmuch as the rule uses the disjunctive, a person may qualify to render expert testimony in any one of the five ways listed: knowledge, skill, experience, training, or education. *Friendship Heights,* 785 F.2d at 1159. Where the expert's qualifications are challenged,

> the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered. One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion.

*Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 799 (4th Cir.1989), *cert. denied,* 493 U.S. 1073, 110 S.Ct. 1120, 107 L.Ed.2d 1027 (1990).

[3] The subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend. If, again in the disjunctive, the proposed testimony will recount or employ "scientific, technical, or other specialized knowledge," it is a

4

> proper subject. There is no gap between the "specialized knowledge" that is admissible under the rule and the "common knowledge" that is not. The boundary between the two is defined by helpfulness.
>
> The expert may testify "in the form of an opinion or otherwise." An opinion is not objectionable simply "because it embraces an ultimate issue to be decided by the trier of fact," Fed.R.Evid. 704(a), though such an opinion may be excluded if it is not helpful to *378 the trier of fact under Rule 702. Even then, the inadmissability of the expert's ultimate opinion does not necessarily banish him from the stand altogether, because his specialized knowledge may still assist the trier of fact in other ways. "An expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." Rule 702 advisory committee's note.

*Kopf v. Skrym*, 993 F. 2d. 374,377 (1993).

When discussing the "objective reasonableness" standard applicable to excessive force claims, the Fourth Circuit stated:

> As a general proposition, the "objective reasonableness" standard may be comprehensible to a lay juror. On the other hand, any "objective" test implies the existence of a standard of conduct, and, where the standard is not defined by the generic—a reasonable *person*—but rather by the specific—a reasonable *officer*—it is more likely that Rule 702's line between common and specialized knowledge has been crossed.

*Kopf v. Skrym*, 993 F. 2d. 374,378 (1993).

In these cases, Batterton is being offered as an expert witness in the fields of law enforcement, police activity, and police administration and supervision for the purpose of offering opinions regarding accepted proper law enforcement practice as it relates to the inherent dangers associated with law enforcement officers conducting traffic stops, proper law enforcement methods for safely conducting traffic stops, and performing custodial arrests during the course of traffic stops while not violating the civil rights of the drivers and/or passengers involved. Batterton's testimony will be helpful to the trier of fact in these cases by providing

5

testimony regarding specialized law enforcement issues about which a layperson without prior experience as a trained law enforcement officer is unlikely to be familiar. More particularly, a layperson is not likely to be familiar with the training received by law enforcement officers regarding the dangers associated with traffic stops, acceptable methods for conducting constitutionally compliant traffic stops, circumstances occurring during traffic stops that warrant a custodial arrest of a driver and/or passenger, constitutionally permissible use of force during the course of a custodial arrest, officer discretion as compared to request for and adherence to instructions provided by a supervisor, and/or what a reasonable officer faced with a particular set of circumstances should know as it relates to the appropriateness and constitutionality of conduct such as use of force or the decision to arrest based upon conduct of an individual in the presence of the officer.

Plaintiff Catherine Newkirk alleges Defendant Enzor violated her civil rights by using excessive force in connection with arresting her during the course of the traffic stop at issue in this case. Plaintiff Jerome Newkirk alleges Defendant Enzor violated his civil rights by arresting him without probable cause. Defendant Enzor has asserted that he is entitled to qualified immunity from the claims of both Plaintiffs and that if he is not immune from civil liability, his actions were reasonable and appropriate under the circumstances - i.e. that the force used to complete the arrest of Plaintiff Catherine Newkirk was not excessive and the arrest of Plaintiff Jerome Newkirk was based on sufficient probable cause that he had in fact committed a crime in Defendant Enzor's presence. These concepts are technical in nature inasmuch as the standard applicable to Defendant Enzor's conduct is not simply objective reasonableness by the standards to which a reasonable person is held, but rather the standards to which a reasonable *law enforcement officer* is held. As a supervisor and trainer of law enforcement officers, Batterton is

keenly qualified to explain to a jury the types of training are provided to law enforcement officers with regard to traffic stops, arrests, use of force in connection with an arrest, and the generally accepted standards of conduct law enforcement officers are expected to abide by. Batterton's knowledge and experience also make him qualified to testify regarding the various types of scenarios a reasonable officer should be prepared to encounter during the course of a traffic stop, what a reasonable officer should know in terms of the constitutional rights afforded a citizen during the course of a traffic stop, and how a reasonable law enforcement officer might be expected to behave when confronted with certain types of evolving circumstances during the course of a traffic stop.

Plaintiffs' motion does not challenge Batterton's qualifications as an expert in the fields of law enforcement, police activity and police administration and supervision. Rather, Plaintiffs appear to simply assert that Batterton makes inappropriate factual determinations and legal conclusions within his report.

A closer look at Batterton's report reveals that while he relies upon certain facts in connection with his opinions, his report does not offer opinions about what the facts are, but rather opinions regarding the appropriateness of Enzor's conduct from the perspective of a "reasonable officer" faced with the facts as described in the OPR report, shown on the dash-cam videos, and set forth in the other materials he reviewed in connection with the formulation of his opinions. In each of the paragraphs identified in Plaintiffs' motion, Batterton offers an opinion regarding Defendant Enzor's compliance with generally accepted proper law enforcement practice as it relates to a specific issue associated with the facts and circumstances surrounding the traffic stop involving Plaintiffs. While Batterton clearly makes reference to facts as set forth in the OPR report, the dash-cam videos, and the Complaints of Plaintiffs, he does not

offer opinions about what the facts are, but rather analysis of the conduct of Enzor in light of the facts and circumstances depicted in the video and stated in the record from the perspective of a supervisor with a history of reviewing officer conduct for appropriateness and constitutional validity.

As for the assertion that Batterton inappropriately engages in the formulation of legal conclusions, Enzor certainly agrees that determination of the law applicable to the facts determined by the jury is the province of the court. However, Enzor simply asserts that it is appropriate and permissible for an expert in the fields of law enforcement training and supervision to give consideration to the types of legal training routinely provided to law enforcement officers when rendering opinions regarding a law enforcement officer's compliance therewith. Batterton's report does not set forth opinions regarding the law to be applied by the jury to the claims of the Plaintiffs, but rather shares his understanding of the legal standards applicable to the traffic stop at issue, the use of force by a law enforcement officer in connection with an arrest, and the existence of multiple South Carolina statutory laws that may be relevant to the arrest of Plaintiff Jerome Newkirk.

As noted by Plaintiffs, Batterton does indeed use the phrase "probable cause" in paragraph 22 of his report. However, a closer look at said paragraph reveals Batterton's opinion that "Trooper Enzor's initial stop of Mrs. Newkirk for speeding was *consistent with proper law enforcement practice* in that the trooper had probable cause *to believe* that Mrs. Newkirk was violating the speeding statute." The opinion that Enzor acted *consistent with proper law enforcement practice* is simply not synonymous with the statement of a legal conclusion regarding the existence of probable cause to arrest Mrs. Newkirk. Furthermore, Enzor asserts that Catherine Newkirk's position that she was not speeding has no bearing on whether a

reasonable officer in Enzor's position would have believed that she was violating the speeding statute at the time the traffic stop was initiated. Thus, Batterton's opinion that it was appropriate for Enzor to stop her under the circumstances he observed is not dependent upon Newkirk's testimony, nor is it undermined by her dispute of the facts testified to by Enzor.

In the end, Batterton's expert opinions are just that - opinions. While Enzor respectfully asserts that Batterton's opinions relate to technical law enforcement concepts and are based on a wealth of law enforcement related knowledge gained through experience in the field and training and supervision of other law enforcement officers, they are also based in part on the facts as he understands them to be. He is certainly subject to cross-examination and the jury is empowered to give his testimony the weight it chooses and judge his credibility accordingly in the event Plaintiffs' counsel are able to demonstrate that his opinions are based upon an inaccurate understanding of the facts and circumstances surrounding the traffic stop at issue.

Similar to any potential issues of credibility associated with Batterton's understanding of the facts, Batterton's understanding of the legal concepts likely to be included in training provided to a reasonable law enforcement officer is also subject to cross-examination and the court's likely instruction to the jury that an expert's testimonial references to law and legal concepts are not to be confused with the law as charged by the court.

## CONCLUSION

Plaintiffs' motion fails to demonstrate that Brian S. Batterton is not qualified to offer expert testimony regarding the opinions set forth in his report, nor does it demonstrate that Batterton's opinions are purely speculative inferences regarding commonplace concepts or inappropriately invade the province of the court and/or the jury. Therefore, for the reasons set

forth above, Defendant Enzor requests that Plaintiffs' Motion in Limine (ECF #124 and ECF #117) be denied.

                                                S/SAMUEL F. ARTHUR, III
                                                SAMUEL F. ARTHUR, III
                                                Aiken, Bridges, Elliott, Tyler & Saleeby, P.A.
                                                Federal ID #7070
                                                PO Drawer 1931
                                                Florence, SC 29503
                                                Telephone:  843.669.8787
                                                Fax:          843.664.0097
                                                SFA@AIKENBRIDGES.COM

                                                **ATTORNEYS FOR DEFENDANTS**

Florence, South Carolina

February 21, 2017.

## CERTIFICATE OF SERVICE

I hereby certify that **DEFENDANT JAMES B. ENZOR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE** was filed electronically on February 21, 2017 and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D). The following parties were served via ECF:

Richard A. Harpootlian, Esquire
Christopher P. Kenney, Esquire
Richard A. Harpootlian, P.A.
1401 Laurel Street
Columbia, SC  29202

Joseph M. McCullouch, Jr., Esquire
1426 Richland Street
Columbia, SC  29211

Eugene H. Matthews, Esquire
Cliff Rollins, Esquire
Richardson Plowden & Robinson, P.A.
1900 Barnwell Street
Columbia, SC  29201

S/SAMUEL F. ARTHUR, III
SAMUEL F. ARTHUR, III

(30306)