**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Catherine B. Newkirk, Plaintiff, v. James B. Enzor, *individually and as an officer of the South Carolina Highway Patrol, and the* South Carolina Department of Public Safety, Defendants. | ) | Civil Action No. 2:13-1635-RMG **ORDER AND OPINION** |

This matter is before the Court on the on the Report and Recommendation of the Magistrate Judge (Dkt. No. 80), recommending summary judgment for Defendants James Enzor and the South Carolina Department of Public Safety ("SCDPS"). For the reasons set forth below, the Court declines, grants in part and denies in part Mr. Enzor's motion for summary judgment, and denies SCDPS's motion for summary judgment.

## I. Background

### A. Factual Recitation[1]

This lawsuit arises from a traffic stop on Interstate 95 ("I-95") and an arrest following the stop. (Dkt. No. 1.) On October 14, 2012, Mr. Enzor, then a Lance Corporal with the South Carolina Highway Patrol, stopped a car driven by Plaintiff Catherine Newkirk for speeding in

[1] This factual recitation, which is for background purposes only and does not constitute judicial findings of fact, is based on video from the dashboard camera in Mr. Enzor's patrol car and on audio from a microphone he wore; from the Fourth Circuit's factual recitation in its opinion dismissing Mr. Enzor's interlocutory appeal, which is based on the same video and audio sources, *Newkirk v. Enzor*, No. 15-1795, 2017 WL 56718 (4th Cir. Jan. 5, 2017); and on the Report and Recommendations of the Magistrate Judge (Dkt. No. 80).

Florence County, South Carolina. Her husband, Plaintiff Jerome Newkirk, was a passenger. Mr. Enzor told Mrs. Newkirk that she had been traveling at 77 miles per hour in a construction work zone where the posted speed limit was 55 miles per hour.[2] After reviewing Mrs. Newkirk's registration and proof of insurance, Mr. Enzor decided to issue a citation for 64 mph in a 55 mph zone. Mrs. Newkirk, however, insisted that she had not been speeding, stating, "I think there is a bit of discrimination going on here." Mr. Enzor then ordered her to exit the car and she did so, going to the rear of the car with Mr. Enzor.

Mr. Enzor and Mrs. Newkirk then engaged in a somewhat inaudible discussion, during which Mr. Enzor pointed at Mrs. Newkirk and said, "Let me tell you something right now," and Mrs. Newkirk responded, "No." Mr. Enzor then arrested Mrs. Newkirk. He took her wrist and attempted to pull her arms toward him, then stepped behind her and pressed her against the car, twisting her hands and wrists to pull her hands behind her back. He instructed Mrs. Newkirk to "quit resisting arrest," and she responded, "I'm not resisting arrest." He then called for backup.

Struggling to handcuff Mrs. Newkirk (a woman of fifty years of age), Mr. Enzor repeatedly yelled at Mrs. Newkirk, "Get in the car," referring to his patrol car. Mrs. Newkirk protested, "You're hurting me," and called out to her husband. Mr. Newkirk exited the car and walked to Mr. Enzor, allegedly telling him that his actions were unnecessary (his statements are inaudible). Still struggling to handcuff Mrs. Newkirk, Mr. Enzor pointed at Mr. Newkirk, and instructed him to "get in the car, sir, get in the car." Mr. Newkirk walked back to the car, and once inside, left the door slightly ajar, keeping his head turned toward Mr. Enzor and Mrs. Newkirk. While Mr. Enzor continued to struggle with Mrs. Newkirk, Mr. Newkirk shouted "ain't no reason for that"

---

[2] Mr. Enzor stated to SCDPS investigators that he measured Mrs. Newkirk's speed with a Lidar device. (Dkt. No. 65-2.)

and other inaudible statements to Mr. Enzor. Mr. Enzor then told Mr. Newkirk that he too was under arrest. Once Mrs. Newkirk was in the custody of an officer who responded to Mr. Enzor's request for backup, Mr. Enzor arrested Mr. Newkirk.

**B. Procedural History**

The Newkirks each filed suit against Mr. Enzor and SCDPS. Mr. Newkirk alleged (1) false arrest in violation of his constitutional rights under 42 U.S.C. § 1983, against Mr. Enzor; (2) negligence, gross negligence, or recklessness against SCDPS; (3) outrage against SCDPS; (4) malicious prosecution against SCDPS; (5) false imprisonment against SCDPS; and (6) negligent supervision against SCDPS. Mrs. Newkirk alleged (1) false arrest and excessive force in violation of her constitutional rights under 42 U.S.C. § 1983, against Mr. Enzor; (2) assault against SCDPS; (3) battery against SCDPS; (4) negligence, gross negligence, or recklessness against SCDPS; (5) outrage against SCDPS; (6) malicious prosecution against SCDPS; (7) false imprisonment against SCDPS; and (8) negligent supervision against SCDPS. (Dkt. No. 1-1; (Dkt. No. 1-1 in 2:13-1635-RMG).) Defendants removed both cases to this Court and moved for summary judgment. (Dkt. Nos. 64 & 65.)

The Magistrate Judge recommended summary judgment for Defendants on Mrs. Newkirk's claims on April 8, 2015. (Dkt. No. 80.) Mrs. Newkirk abandoned her outrage claim in her response to the summary judgment motion, agreeing that the South Carolina Tort Claims Act ("SCTCA") does not waive immunity for that claim. (Dkt. No. 74 at 25.) The Report and Recommendation addressed Mrs. Newkirk's constitutional allegations against Mr. Enzor and her remaining tort claims against SCDPS. Plaintiff objected to the Report and Recommendation on May 7, 2015, abandoning her negligent supervision claim (Dkt. No. 86 at 3), and Defendant SCDPS replied to Plaintiff's objections on May 26, 2015 (Dkt. No. 88).

On June 19, 2015, the Court adopted in part and declined to adopt in part the Report and Recommendation of the Magistrate Judge. (Dkt. No. 89.) The Court granted summary judgment on Mrs. Newkirk's § 1983 claim for unlawful arrest against Mr. Enzor and her claims for malicious prosecution and false imprisonment against SCDPS, but not her § 1983 claim for excessive force or her claims for assault, battery, and negligence/gross negligence/recklessness against SCDPS. (*Id.* at 19.) After the Court ruled on Defendants' motions for summary judgment, SCDPS moved for reconsideration, arguing the Court misapprehended its immunity argument as an Eleventh Amendment argument rather than a statutory argument based on the SCTCA. (Dkt. No. 96.) The Court granted SCDPS's motion in part to remove the erroneous references to the Eleventh Amendment, but ruled the error did not affect its disposition of SCDPS's immunity claims. (Dkt. No. 100.) Meanwhile, Mr. Enzor then filed an interlocutory appeal of the Court's denial of his claim of qualified immunity. (Dkt. No. 93.) The United States Court of Appeals for the Fourth Circuit dismissed the appeal in an opinion issued on April 13, 2016. (Dkt. No. 102.) On January 27, 2017, Plaintiff moved for reconsideration, arguing the Court erroneously found Mrs. Newkirk had conceded that she had been speeding on October 14, 2012. (Dkt. No. 109 in Civ. No. 2:13-1634-RMG.) The Court granted Plaintiff's motion and issued an amended order removing the erroneous factual statement. (Dkt. Nos. 109 & 110.) Finally, on March 3, 2017, Plaintiff moved for clarification of the Court's amended order, seeking clarification that Mr. Enzor is not entitled to summary judgment as to Mrs. Newkirk's § 1983 false arrest claim if she proves that Mr. Enzor had no probable cause to arrest her. (Dkt. No. 155 in Civ. No. 2:13-1634-RMG.) On March 8, 2017, the Court vacated the amended order ruling on Defendants' motions for summary judgment as to Mrs. Newkirk's claims. (Dkt. No. 162 in 2:13-1634-RMG.) With this Order, the Court rules on Defendant's motions for summary judgment and on the Report and Recommendation

concerning those motions. This Order does not affect Mr. Newkirk's claims in consolidated Civil Case Number 2:15-1634-RMG.

## II. Legal Standard

### A. Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

When a proper objection is made to a particular issue, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). However, "[t]he district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).

### B. Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining

whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### C. Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). When considering whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

## III. Discussion

### A. Unlawful Arrest Claim Against Defendant Enzor

Mrs. Newkirk's presents two theories of liability for her § 1983 unlawful arrest claim. First, she asserts Mr. Enzor had no probable cause to arrest her because she in fact was not

speeding. Second, she asserts that, regardless of whether probable cause existed, Mr. Enzor arrested her in retaliation for her accusation that he was behaving in a racially discriminatory manner and not because probable cause existed for a valid arrest. (Dkt. No. 74 at 13–16.) Mr. Enzor asserts qualified immunity as to both theories of liability. (Dkt. No. 64-1 at 8.) He also asserts that he is entitled to summary judgment on the merits of Mrs. Newkirk's false arrest claims under either theory. (*Id.* at 16.) For the reasons set forth below, the Court finds Mr. Enzor has qualified immunity from Mrs. Newkirk's retaliatory arrest claim, but not from her arrest without probable cause claim.

**1. *Arrest Without Probable Cause***

A warrantless arrest without probable cause violates the Fourth Amendment. *Draper v. United States*, 358 U.S. 307, 310 (1959); *see also Maryland v. Pringle*, 540 U.S. 366, 370 (2003). A misdemeanor committed in the presence of law enforcement provides probable cause for an arrest, even a minor misdemeanor not punishable by any term of imprisonment. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). In South Carolina, speeding by any amount is a misdemeanor. S.C. Code § 56-5-1520(G). Further, South Carolina law permits a trooper to allow a person cited for speeding to proceed without arrest or a roadside bond only if the driver accepts the citation, which "shall constitute the person's recognizance to comply with the terms of the citation." S.C. Code § 56-25-30. Although troopers may accept roadside bond in lieu of arresting an offender, *see* S.C. Code § 23-6-150, the practice is not mandatory and it is no longer prevalent, *see* South Carolina Summary Court Judges Bench Book, Traffic, § M-2. Refusing to accept a speeding citation therefore provides probable cause for an arrest separate from the act of speeding.

Mrs. Newkirk asserts Mr. Enzor falsely arrested her without probable cause, in violation of the Fourth Amendment. In response, Mr. Enzor argues,

> Plaintiff's speeding violation, refusal to accept a traffic citation in lieu of arrest, and flagrant resistance to arrest, all committed within Defendant Enzor's presence, were sufficient to support his decision to place her under arrest. Defendant Enzor was clearly within his authority to arrest Plaintiff in this case and did not transgress any bright lines in doing so. Therefore, Defendant Enzor is entitled to qualified immunity for Plaintiff's § 1983 claim related to her alleged unlawful arrest.

(Dkt. No. 64-1 at 11.) That argument begs the questions of whether Mrs. Newkirk was in fact speeding, did in fact refuse to accept the speeding citation, and did in fact resist arrest. Mr. Enzor's claim for summary judgment on the merits likewise simply assumes that Mr. Enzor in fact witnessed Mrs. Newkirk speeding on I-95. (See Dkt. No. 64-1 at 16–17.) Those are disputed material facts to be decided by the jury. Moreover, while a person may be charged only with resisting arrest (*i.e.*, where uncharged conduct provided probable cause for the arrest), resisting arrest alone does not provide probable cause for the arrest that was resisted. *Cf. South Carolina v. Goodwin*, 567 S.E.2d 912, 914 (S.C. Ct. App. 2002) (holding probable cause for arrest for resisting arrest provided by uncharged assault on arresting officer). In other words, *if* Mr. Enzor did not observe Mrs. Newkirk speeding *and if* she did not refuse the speeding citation, then (and only then) no probable cause existed for her arrest. Because those antecedents are factual questions for the jury, the Court denies Mr. Enzor's motion for summary judgment on Mrs. Newkirk's unlawful arrest without probable cause claim.

**2. *Retaliatory Arrest***

Mrs. Newkirk also claims Mr. Enzor arrested her in retaliation for her criticism of him, after he had decided not to arrest her for speeding. (Dkt. No. 74 at 14.) Regarding that arrest claim, Mr. Enzor first argues that because he had probable cause to arrest Mrs. Newkirk based on her violation of the speed limit, he could not have violated her right to be free of unreasonable arrest. Second, he argues that even if there is a constitutional right to be free of a retaliatory arrest case where independent and valid probable cause for an arrest exists, that right has not been clearly

established by the Fourth Circuit or by the Supreme Court, and that he is therefore entitled to qualified immunity. (Dkt. No. 64-1 at 5–6.)

The Supreme Court has held even a very minor traffic violation committed in the presence of an officer can provide probable cause for arrest. *Atwater*, 532 U.S. at 354. So if Plaintiff were found to have been speeding, then Mrs. Newkirk's false arrest claim would fail. On the other hand, if Mr. Enzor were found to have arrested Mrs. Newkirk because she questioned Mr. Enzor's motives *and if no separate probable cause for the arrest existed* then Mrs. Newkirk would prevail. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." (citations omitted)). The question here is whether Mr. Enzor violated Mrs. Newkirk's rights by coming to a clear decision not to arrest her based on the speeding violation but then, upon hearing her opinion of him, deciding to arrest her in retaliation for her speech.

The Fourth Circuit has recently answered that question: independent probable cause for an arrest cures an otherwise retaliatory arrest. *Pegg v. Herrnberger*, 845 F.3d 112, 119 (4th Cir. 2017). In *Pegg*, the "district court determined that [defendant's] arrest of [plaintiff] was unlawful because it believed [defendant] did not 'principally' arrest [plaintiff] for the expired inspection sticker. Instead, the district court opined the arrest was 'for obstructing an officer only after he asked [defendant] a question during the traffic stop.'" 845 F.3d at 117–18. The Fourth Circuit held the district court erred when it denied the officer's qualified immunity claim because "[t]he proper focus of the inquiry is not any subjective reason for arresting [plaintiff], but only the objective facts surrounding the arrest. As the Supreme Court has previously explained, the 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Id.* at 119 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153

(2004)). Consistent with that controlling Fourth Circuit precedent, the Court holds Mr. Enzor entitled to qualified immunity regarding Mrs. Newkirk's retaliatory arrest claim.

**B. Section 1983 Excessive Force Claim Against Defendant Enzor**

Mrs. Newkirk also alleges that the force Mr. Enzor applied in making the arrest was excessive and unconstitutional. Mr. Enzor seeks summary judgment on this claim because the amount of force applied was reasonable as a matter of law and because he is entitled to qualified immunity. (Dkt. No. 64-1 at 12–17.) The Court disagrees with both arguments and denies the motion for summary judgment as to the excessive force claim.

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person. *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997). Excessive force claims are considered under an "objective reasonableness" standard. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). This test requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). What is objectively reasonable depends on the conditions at the time force is used while recognizing police officers often make split second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

When considering a police officer's actions under this "objective reasonableness" standard, the Court must consider the circumstances of the particular case, including the severity of the crime committed, whether the subject posed an immediate threat to the safety of the police officer or others, and whether the subject was actively resisting arrest or attempting to evade arrest, *id.* at 396, and the Court must focus on the moment that the force is employed, *Elliott v. Leavitt,* 99 F.3d 640, 643 (4th Cir. 1996). Considering the evidence under that standard, the Court cannot find that Mr. Enzor is entitled to summary judgment on Mrs. Newkirk's excessive force claim. A

reasonable jury viewing the video of the incident could find that Mr. Enzor used force out of anger, frustration, and retaliation for her speech, and not because he reasonably believed Mrs. Newkirk posed an immediate threat to Mr. Enzor's safety or because he reasonably believed that she was actively resisting arrest or attempting to evade arrest or that she was likely to do so. Mr. Enzor's assertions that "she was noncompliant" and that the force he exercised was "minimal" (Dkt. No. 64-1 at 15) are facts subject to dispute. The excessive force claim therefore is inappropriate for summary judgment.

Mr. Enzor argues that he is entitled to qualified immunity because the arrest itself was legal and qualified immunity covers the use of a "bare minimum amount of force necessary to [e]ffect" a legal arrest." (See Dkt. No. 15–16.) The Fourth Circuit has held that "[a]n efficient, lawful arrest of a resisting suspect that causes the suspect to suffer only de minimis injuries does not constitute excessive force" and that where the factual predicates of that rule are not genuinely disputed, a defendant officer is entitled to summary judgment based on qualified immunity. *Pegg*, 845 F.3d at 120. The disputed facts recited above, however, make summary judgment based on qualified immunity inappropriate in this case. "Disputed facts are treated no differently in this portion of the qualified immunity analysis than in any other context." *Vathekan v. Prince George's County*, 154 F.3d 173, 180 (4th Cir. 1998). Here, Mrs. Newkirk disputes the lawfulness of her arrest, she disputes whether she resisted Mr. Enzor, and she disputes whether her injuries are *de minimis*. Accordingly, "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." *Id.*

**C. State Tort Claims Against SCDPS**

SCDPS moves for summary judgment on all state tort claims based on governmental immunity under the SCTCA for employee conduct that is beyond the scope of official duty or that constitutes actual fraud, actual malice, intent to harm, or moral turpitude. SCDPS additionally

moves for summary judgment on Mrs. Newkirk's negligence/gross negligence/recklessness claim because Mrs. Newkirk fails to identify a duty of care Mr. Enzor owed Mrs. Newkirk, because her claim is barred by the "public duty rule," and because of the SCTCA's discretionary function exception. For the reasons set forth below, the Court denies SCDPS's motion for summary judgment.

1. ***SCDPS's Immunity from Tort Claims***

SCDPS is a governmental entity under the SCTCA, so Mrs. Newkirk's South Carolina-law tort claims against SCDPS for assault, battery, negligence/gross negligence/recklessness, malicious prosecution, and false imprisonment are subject to the limitations of the SCTCA. *See* S.C. Code § 15-78-40. "The remedy provided by [the Tort Claims Act] is the exclusive civil remedy available *for any tort* committed by a governmental entity, its employees, or its agents except as provided in § 15–78–70(b)." *Flateau v. Harrelson*, 584 S.E.2d 413, 416 (S.C. Ct. App. 2003) (quoting S.C. Code § 15–78–20(b)) (emphasis in original). The doctrine of *respondeat superior* therefore is inapplicable to claims against South Carolina governmental entities or their employees. Governmental entities are vicariously liable for their employees' torts only as provided by the statute; governmental entities are not additionally or alternatively liable under common-law vicarious liability doctrines. Further, "under the doctrine of *respondeat superior*, the principal is liable *in addition* to the agent, not by reason of his consent to be liable, but by operation of law." *S.C. Ins. Co. v. James C. Greene & Co.*, 348 S.E.2d 617, 624 (S.C. Ct. App. 1986) (emphasis added). But under the SCTCA, for a given tort, either the governmental entity or the employee is liable but not both. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable and the plaintiff must sue the governmental agency itself. *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995) (citing S.C. Code § 15–78–70(a)). "However, if the plaintiff proves that 'the employee's conduct was not

within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude,' then the governmental agency is not liable, and the employee is personally liable." *Id.* (quoting S.C. Code § 15–78–70(b)).

SCDPS argues the SCTCA bars Mrs. Newkirk's tort claims because his conduct was beyond the scope of his official duties, because assault, battery, malicious prosecution, and false imprisonment are "intentional torts," and because Mrs. Newkirk alleges Mr. Enzor is "a racist, and his actions from the very beginning of the encounter were intentional and based on malice." (Dkt. No. 65-1 at 10–11.) The Court finds each of those arguments unpersuasive.

The text of the relevant SCTCA exception is disjunctive: the state is immune either if the employee acted outside the scope of his duties *or* if his conduct constitutes actual fraud, actual malice, intent to harm, or moral turpitude. It may appear impossible to dispute that Mr. Enzor, then a state trooper, acted within the scope of his official duties when he effected a traffic stop while on duty patrolling I-95. *See Wade v. Berkeley County*, 498 S.E.2d 684, 688 (S.C. Ct. App. 1998) ("For a government employee to be acting within the scope of his official duty or employment, the employee must be (1) "acting in and about the official business of the government entity," and (2) "performing official duties." (quoting S.C. Code § 15-78-30(i))). Nonetheless, SCDPS denies that Mr. Enzor acted within the scope of his official duties. (*See, e.g.*, Dkt. No. 4 ¶ 19.) SCDPS may present that position at trial, but for summary judgment SCDPS must show that it is beyond dispute that Mr. Enzor acted beyond the scope of his duties as a trooper when (according to SCDPS) he stopped to the Newkirks for speeding while on duty patrolling I-95 for speeding infractions. SCDPS has not met that burden. Instead, SCDPS only points to deposition testimony in which SCDPS asked Mrs. Newkirk whether she believed acting on racist beliefs is part of Mr. Enzor's "job as a trooper," to which she answered, "It's not." (Dkt. No. 65-1 at 12–

13.) Mrs. Newkirk's personal beliefs about South Carolina highway patrolman's duties are not relevant to the definition of scope of official duty or employment set forth in S.C. Code § 15-78-30(i).

The SCTCA also provides immunity for conduct within the scope of an employee's duties if the tortious conduct constitutes "actual fraud, actual malice, intent to harm, or moral turpitude." Although the SCTCA generally "is not intended to protect state employees from liability for intentional torts," *Anthony v. Ward*, 336 F. App'x 311, 317 (4th Cir. 2009), it does not automatically grant state entities categorical immunity from any intentional tort committed by an employee acting within the scope of his official duties. When an employee acts within the scope of his official duties, his governmental entity employer is immune from liability for his tortious conduct only when that conduct constitutes "actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." Although those terms "must be liberally construed in favor of the governmental defendant," *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 178 (4th Cir. 2010) (citing *Faile v. S.C. Dep't of Juvenile Justice*, 566 S.E.2d 536, 540 (S.C. 2002)), they cannot be fairly construed to encompass every instance of any intentional tort. Indeed, each tort Mrs. Newkirk alleges could be committed without actual malice or intent to harm. *See, e.g.*, *McBride v. Sch. Dist. of Greenville Cty.*, 698 S.E.2d 845, 855 (S.C. Ct. App. 2010) ("[O]ne need not show actual malice in order to successfully maintain an action for malicious prosecution. Therefore, the circuit court erred in concluding that a cause of action for malicious prosecution is barred by section 15-78-60(17) *because of its elements*." (emphasis added)).

Whether immunity applies therefore depends upon the facts of the case, and, where material facts are disputed, summary judgment is inappropriate and "[i]mmunity under the statute is an affirmative defense that must be proved by the defendant at trial." *Frazier v. Badger*, 603

S.E.2d 587, 590 (S.C. 2004). Likewise, SCDPS is not immune because Plaintiff alleges Mr. Enzor is "a racist, and his actions from the very beginning of the encounter were intentional and based on malice." Rather, SCDPS is immune if and only if it proves its affirmative defense of immunity at trial. The Court therefore denies SCDPS's motion for summary judgment based on SCTCA immunity.

**2.** ***Negligence/Gross Negligence/Recklessness***

SCDPS additionally moves for summary judgment on Mrs. Newkirk's negligence/gross negligence/recklessness claim because Mrs. Newkirk purportedly fails to identify a duty of care Mr. Enzor owed Mrs. Newkirk, because her claim is barred by the "public duty rule," and because of the SCTCA's discretionary function exception. The Court finds no merit in SCDPS's arguments.

"An essential element in a cause of action based upon negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Edwards v. Lexington Cty. Sheriff's Dep't*, 688 S.E.2d 125, 128 (S.C. 2010). "A plaintiff alleging negligence on the part of a governmental actor or entity may rely either upon a duty created by statute or one founded on the common law." *Id.* Under the "public duty rule," "statutes which create or define the duties of a public office create no duty of care towards individual members of the general public." *Id.* at 129. Because Mrs. Newkirk does not assert negligence based on breach of a statutory duty, SCDPS's argument based on the public duty rule is inapposite to her negligence claim. *Arthurs ex rel. Estate of Munn v. Aiken County*, 551 S.E.2d 579, 582 (S.C. 2001) ("When, and only when, the plaintiff relies upon a statute as creating the duty does a doctrine known as the 'public duty rule' come into play.").

Because Mrs. Newkirk does not assert negligence based on a breach of a statutory duty, her negligence claim must rest upon a duty founded on the common law. "[W]hen the duty is founded on the common law, we refer to this as a legal duty arising from 'special circumstances.'"

*Edwards*, 688 S.E.2d at 128. The evidence is undisputed that Mr. Enzor effected a roadside traffic stop of Mrs. Newkirk on I-95. Mr. Enzor chose to place Mrs. Newkirk under his control, and Mrs. Newkirk was not free to decline or to terminate the encounter. S.C. Code Ann. § 56-5-750 (providing criminal penalties including imprisonment for a driver's failure to stop for law enforcement). The Court therefore concludes as a matter of law that Mr. Enzor created special circumstances giving rise to a duty of care owed to Mrs. Newkirk. *Crowley v. Spivey*, 329 S.E.2d 774, 780 (S.C. Ct. App. 1985) ("[O]ne who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care."). Specifically, Mr. Enzor owed Mrs. Newkirk the duty "to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation." *Jones v. Am. Fid. & Cas. Co.*, 43 S.E.2d 355, 359 (S.C. 1947); *see also Best v. Duke Univ.*, 448 S.E.2d 506, 511 (N.C. 1994) ("In a negligence action, a law enforcement officer is held to the standard of care that a reasonably prudent person would exercise in the discharge of official duties of a like nature under like circumstances." (internal quotation marks omitted)). Whether Mr. Enzor breached that duty and thereby caused injury to Mrs. Newkirk is a question of fact for the jury.

Court therefore denies SCDPS's motion for summary judgment on Mrs. Newkirk's negligence claim.

## IV. Conclusion

For the foregoing reasons, the Court **DECLINES TO ADOPT** the Report and Recommendation (Dkt. No. 80). The Court **GRANTS IN PART** Defendant Enzor's motion for summary judgment (Dkt. No. 64) to the extent Plaintiff asserts a claim for retaliatory false arrest where probable cause for an arrest existed, and otherwise **DENIES** the motion. The Court **DENIES** Defendant SCDPS's motion for summary judgment (Dkt. No. 65).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March 8, 2017
Charleston, South Carolina